UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>   Plaintiff,<br><br>         v.<br><br>EMPIRE HOLDINGS GROUP LLC, also d/b/a ECOMMERCE EMPIRE BUILDERS and STOREFUNNELS.NET, a limited liability company, and<br><br>PETER PRUSINOWSKI, aka PETER PRU, individually and as an officer of Empire Holdings Group LLC,<br><br>   Defendants. | Case No.   24-CV-4949 |

### RULE 65 CERTIFICATION AND DECLARATION OF COUNSEL IN SUPPORT OF FTC'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

I, Ryan A. McAuliffe certify and declare as follows:

1. I am an attorney for Plaintiff, the Federal Trade Commission ("FTC"), an independent agency of the United States Government. I am a member of good standing of the bar of Maryland. My business address is Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Mail Stop CC-8528, Washington, D.C. 20580.

2. I submit this declaration pursuant to Rule 65 of the Federal Rules of Civil Procedure in support of Plaintiff's emergency motion for a temporary restraining order with an asset freeze, appointment of a receiver, other equitable relief, and an order to show cause why a preliminary injunction should not issue ("TRO Motion"), and in support of Plaintiff's request for an emergency hearing on the TRO Motion.

1

3. On September 18, 2024, counsel for Plaintiff sent copies of the Civil Cover Sheet, the Complaint, the TRO Motion, the proposed TRO, and the supporting memorandum and evidence to Defendants via email at the following: peter@ecommerceempirebuilders.com and ▮▮▮▮▮▮▮▮▮▮. In addition, Plaintiff is causing to be served by a process server copies of the aforementioned pleadings, TRO papers and evidence, as well as summonses, to each of the Defendants, in the normal course.

4. While Plaintiff has taken steps to notify Defendants of the filing of this action and the FTC's emergency motion for a TRO, the facts in this case support entry of the TRO *ex parte* if necessary.

5. As demonstrated in the TRO Motion and supporting declarations and exhibits, Defendants have engaged in a concerted course of unlawful conduct over many years, inflicting approximately $14,326,961.86 in consumer harm. Defendants have ample opportunity and motivation to conceal and dissipate assets and destroy important evidence given that (1) Defendants operate a business that relies on misrepresentations and is pervaded by fraud, (2) Plaintiff is seeking at least $9,247,627.73 in monetary judgement against Defendants, (3) Defendants' assets can be easily transferred, hidden, encumbered, or dissipated to avoid discovery, and (4) electronic data and computer equipment used to run Defendants' business can be easily wiped and destroyed.

6. It has been the FTC's experience that defendants who have engaged in deceptive schemes and receive advance notice of the filing of an FTC action often seek to undermine the FTC's efforts by dissipating or concealing assets and destroying evidence. As illustrated by the following examples, the immediate entry of a TRO has in some cases successfully thwarted defendants' attempts to conceal or dissipate assets:

    a. In *FTC v. Educare Centre Services, Inc.*, No. 3:19-cv-196 (W.D. Tex. 2020), after one of the defendants received notice of the TRO, a user logged into the servers of one of the corporate defendants' subsidiaries using the individual defendant's account. The user altered and deleted numerous case-related records.

    b. In *FTC v. Cardiff,* No. 5:18-cv-02104-DMG-PLA (C.D. Cal. 2020), the FTC sought and obtained an *ex parte* TRO with a receivership and asset freeze over a business owned and controlled by an individual defendant who was already under an asset freeze and personal receivership. When he received actual notice of the TRO, but before he was served, the individual defendant rushed to his bank and withdrew $30,000 in cash and money orders from an account in the name of another company he wholly owns and controls.

    c. In *FTC v. American Financial Benefits Center*, No. 4:18-cv-00806-SBA (N.D. 2018), the Court clerk notified counsel for all parties that an order on the FTC's Motion for Preliminary Injunction was imminent. Within hours of the notice, the individual defendant transferred $400,000 from corporate bank accounts to himself, his family, and one of his attorneys.

    d. In *FTC and State of Georgia v. Laptop and Desktop Repair, LLC*, No. 1:16-CV-3591-AT (N.D. Ga. 2016), the FTC sought and obtained an *ex parte* TRO with an asset freeze. After learning that the TRO had been granted, one defendant immediately withdrew money and transferred it to a non-defendant limited liability company. On the day that the court entered a preliminary injunction with an asset freeze, the same defendant withdrew $103,369 from his personal, online brokerage account and transferred the money to another personal account.

e. In *FTC v. Goldman Schwartz Inc.*, No. 4:13-cv-00106 (S.D. Tex. 2013), the FTC obtained an *ex parte* TRO with an asset freeze against numerous corporate and individual defendants, including the companies' owner. Within an hour of being served with the TRO, but before the asset freeze had been fully implemented, the owner withdrew approximately $268,000 from a frozen corporate account. Shortly thereafter, the owner sold approximately $160,000 in securities held in a personal trading account. The next day, the owner's wife withdrew another $18,500 from a non-defendant corporation's account that was subject to the asset freeze. Because the court had issued its asset freeze in advance of these actions, the FTC and a court-appointed monitor were able to recover all of the money.

f. In *FTC v. E.M.A. Nationwide, Inc.,* No. 1:12-CV-2394 (N.D. Ohio 2012), the court denied the Commission's request for an *ex parte* TRO with an asset freeze and required the Commission to serve the defendants before holding a preliminary injunction hearing. The Commission served the defendants on September 28, 2012, and by October 4, 2012 the individual defendants had withdrawn more than $152,000 from a corporate bank account, using the funds to retain attorneys in Canada and Miami, to prepay one individual defendant's apartment rent for three months, and to have cash on hand before stipulating to a preliminary injunction with an asset freeze.

g. In *FTC v. Prime Legal Plans,* No. 0:12-cv-61872-RNS (S.D. Fla. 2012), upon hearing that the TRO had been granted, the Defendants went straight to the bank and transferred $1.7 million in assets to a girlfriend and a mother. The bank was able to claw most of it back, but the Commission, and thus consumers, ended up losing about $200,000.

h. In *FTC v. Fereidoun "Fred" Khalilian*, No. 1:10-cv-21788-MGC (S.D. Fla. 2010), the FTC sought and obtained an *ex parte* TRO with an asset freeze. Before the asset

freeze could be processed by the banks, one of the defendant's employees withdrew large amounts of money from the company's bank accounts. The defendant eventually returned some, but not all, of the money. Additionally, the defendant attempted to remove assets located in his personal residence. The receiver, however, was monitoring the defendant's residence, and, after observing people taking a number of items from the defendant's residence at night, was able to halt the defendant's activities.

      i.      In *FTC v. Asia Pacific Telecom, Inc.*, No. 10-cv-3168 (N.D. Ill. 2010), the FTC obtained an *ex parte* TRO freezing the defendants' assets and prohibiting them from destroying documents. After being served with the TRO, one of the individual defendants deleted an email account used to conduct many of the illegal practices at issue in the FTC's complaint. The individual defendant took this step despite being served with a discovery request by the FTC for documents in the account and despite multiple demands from the court-appointed receiver for access to the account. The court ultimately held the individual defendant in contempt for deleting the account in violation of the TRO.

      j.      In *FTC v. Global Mktg. Group, Inc.*, No. 8:06-cv-02272-TCB (M.D. Fla. 2006), the court granted the FTC's *ex parte* motion for a TRO with an asset freeze, which the FTC served on banks known to hold accounts of defendants. After being served with the order, one of the defendants successfully withdrew over $500,000 from accounts previously unknown to the FTC. Most of these funds were wired to offshore bank accounts. This defendant was ultimately held in contempt of court and fled the country after failing to appear at a show cause hearing.

   k. In *FTC v. Connelly*, No. 06-cv-00701-DOC-RNB (C.D. Cal. 2006), upon learning of the FTC's action, three defendants withdrew at least $800,000 from their bank accounts, most of which was never recovered.

   l. In *FTC v. Universal Premium Servs.*, Inc., No. 2:06-cv-00849 (C.D. Cal. 2006), a defendant and his wife withdrew over $45,000 from their joint personal bank account hours after learning of the FTC's action.

   m. In *FTC v. 4049705 Canada Inc.*, No. 04-cv-04694 (N.D. Ill. 2004), the FTC filed a complaint and motion for a TRO and asset freeze, with notice to defendants. Defendants made several substantial money transfers after receiving notice of the FTC's action but before the asset freeze was imposed.

   n. In *FTC v. QT, Inc.*, No. 03-cv-03578 (N.D. Ill. 2003), defendants, after notice of a TRO, withdrew and transferred more than two million dollars from banks that had not yet received notice of the asset freeze.

   o. In *FTC v. Check Investors, Inc.*, No. 03-cv-02115 (D.N.J. 2003), the FTC filed for an *ex parte* temporary restraining order with asset freeze. The Court required that the FTC give the defendants 24 hours' notice before holding a hearing on the FTC's motion. At the conclusion of the hearing, the Court granted the FTC's motion and ordered the defendants' assets frozen. Documents obtained during discovery showed that the defendants had purchased approximately $650,000 in gold coins, bullion, and certificates, of which only approximately $192,000 was found. Records showed that on May 19, 2013, the same day that the Court entered the TRO, the individual defendant's wife visited their safe deposit box. The remaining gold was never recovered.

    p.  In *FTC v. Physicians Healthcare Dev., Inc.*, No. 2:02-cv-02936 (C.D. Cal. 2002), upon receiving notice of the action, the defendants removed or shredded most of their records and documents, including all customer files.

    q.  In *FTC v. World Class Network, Inc.*, No. 97-00162-AHS-EE (C.D. Cal. 1997), two of the defendants withdrew from the bank, spent, and/or hid $202,000 in assets after learning of the action. Another defendant's spouse withdrew over $100,000 and left the state to open and to deposit funds into an out-of-state account.

  7.  Consequently, there is good cause to believe that, absent an expedited hearing and entry of the requested and entry of the requested noticed TRO, immediate and irreparable damage will result to consumers and the Court's ability to craft complete and effective final relief from: (1) the concealment, transfer, or destruction of Defendants' records; and (2) the concealment or transfer of Defendants' assets.

  I declare under penalty of perjury that the foregoing statement is true correct.

Dated: September 18, 2024

                   /s/ Ryan A. McAuliffe
                   Ryan A. McAuliffe

                   Attorney for Plaintiff
                   Federal Trade Commission