**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

FEDERAL TRADE COMMISSION

Plaintiff,

v.

EMPIRE HOLDINGS GROUP LLC, d/b/a ECOMMERCE EMPIRE BUILDERS and STOREFUNNELS.NET, a limited liability company, and PETER PRUSINOWSKI Individually and as officer of Empire Holdings Group LLC,

Defendants.

Case No. 2:24-CV-4949

**MOTION AND MEMORANDUM FOR FEES INCURRED TO DATE, AND ADDITIONAL FEES TO CONTINUE TO DEFEND OR, IN THE ALTERNATIVE, TO WITHDRAW AS COUNSEL OF RECORD**

Defendant Peter Prusinowski, by undersigned counsel, moves the Court to enter an order: (1) modifying the September 20, 2024 Temporary Restraining Order (ECF No. 19) ("TRO") to allow Mr. Prusinowski to obtain specific frozen personal funds necessary for payment of attorneys' fees and costs to date; and (2) modifying the TRO to allow Mr. Prusinowski to obtain specific frozen personal funds necessary for the payment of attorneys' fees and cost to enable defense counsel to continue to defend the case through the date of the preliminary injunction show cause hearing set for November 12, 2024, or, in the alternative, grant leave for defense counsel to withdraw from this case.

## I. Introduction

Based on the exhibits attached to the FTC's filings in these proceedings, it appears that the FTC started its investigation by at least October 2023 and devoted several hundreds of hours in attorney, expert, and investigator time in preparing this action prior to its filing. Unlike other FTC

investigations involving similar e-commerce consulting businesses, the FTC did not serve Mr. Prusinowski with a Civil Investigative Demand or a letter concerning the FTC's Notice of Penalty Offense Authority, either of which would have permitted cooperative dialogue and the opportunity to efficiently resolve any FTC concerns. Instead, Mr. Prusinowski only learned of the FTC's concerns on September 18, 2024, the day the FTC's Complaint and TRO motion were filed.

With its Complaint, the FTC is pursuing three claims to which Mr. Prusinowski has meritorious defenses. On its Section 5 claim, the FTC has challenged advertising claims that, in fact, are true, not misleading, and have substantiation, and the FTC cannot recover monetary relief for any alleged violations in light of *AMG Capital*. On its Business Opportunity Rule claim, the FTC cannot state a claim because the Chair of the FTC admits in rulemaking documents that Mr. Prusinowski's business coaching and consulting activities do not fall within the scope of conduct that the Rule was intended to regulate. On the FTC's Consumer Review Fairness Act claim, it appears that the FTC is not seeking monetary relief on the claim and, in any event, the amount of any monetary relief would be limited. The serious problem Mr. Prusinowski faces, however, is that he cannot mount these defenses without effective defense counsel.

The ability to access counsel is fundamental to our system of justice and the preservation of ordered liberty. Zealous representation not only protects individual defendants, but also safeguards the integrity of our judicial system by ensuring that the government is held accountable to the laws that it seeks to enforce. Without access to the necessary funds to adequately prepare a defense, defense counsel will be unable to gather the evidence necessary to zealously defend Mr. Prusinowski at this crucial stage of the proceedings. Moreover, the allegations in a complaint are mere allegations, which Mr. Prusinowski vigorously opposes, and the government must ultimately prove at trial. Depriving Mr. Prusinowski of access to counsel at such a crucial stage of the

litigation allows the FTC to rest on its pleadings and invites the Court to presume that Mr. Prusinowski is liable for the conduct alleged in the complaint before he can present his meritorious defenses. *See FTC v. 4 Star Resolution, LLC*, No. 15-CR-112S, 2015 WL 4276273, at *1 (W.D.N.Y. July 14, 2015) ("[I]t cannot be ignored that this suit was brought to establish the [D]efendants' wrongdoing; the [C]ourt cannot assume the wrongdoing before judgment in order to remove the [D]efendants' ability to defend themselves.'") (quoting *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987)).

The release of frozen personal funds held by Mr. Prusinowski's attorneys is necessary to preserve his Due Process rights, particularly where the Court has not made a finding, preliminary or otherwise, that the FTC is likely to prevail on its Business Opportunity Rule claim. Accordingly, Mr. Prusinowski requests the Court unfreeze personal funds held by Mr. Prusinowski's attorneys to pay for fees and costs incurred to date and unfreeze additional funds so that Mr. Prusinowski can effectively prepare his defense for the preliminary injunction show cause hearing. Should the Court deny Mr. Prusinowski's request for additional funds to prepare for the preliminary injunction show cause hearing, defense counsel, with Mr. Prusinowski's consent, requests leave to withdraw from the case.

## II. Procedural History

The FTC filed a Complaint (ECF No. 1) and Emergency Noticed Motion for Temporary Restraining Order (ECF No. 2) on September 18, 2024. Mr. Prusinowski filed an Opposition to Plaintiff's Emergency Noticed Motion for Temporary Restraining Order (ECF No. 16) on September 20, 2024. The Court held a hearing on September 20, 2024, during which the Court entered the TRO and asset freeze solely relying on Section 5 of the FTC Act. ECF No. 19 at 2 ("The Court finds the FTC has satisfied its burden to obtain a Temporary Restraining Order

pursuant to Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).”). The Court then set a hearing for October 7, 2024 to show cause why a preliminary injunction should not issue. ECF No. 19.

Immediately after the hearing, Mr. Prusinowski began complying with the TRO by meeting with the Receiver appointed in this case, Kevin Dooley Kent and his counsel, at the Courthouse to discuss transitioning Defendant Empire Holdings Group LLC d/b/a E-Commerce Empire Builders and Storefunnels.net’s (“EEB”) to the Receiver’s control. Mr. Prusinowski cooperated with the Receiver by locating EEB’s assets, accounts, account credentials, and personnel vital to continuing the ongoing lawful operations of EEB’s small business clients. Mr. Prusinowski gathered the requisite information and timely provided to the FTC and the Receiver the personal and business financial disclosure documents on September 25, 2024.

In parallel with Mr. Prusinowski’s efforts to gather the necessary information to cooperate with the Receiver and comply with the TRO, Mr. Prusinowski filed a Motion to Dismiss the FTC’s Business Opportunity Rule claim (ECF No. 23) and an Emergency Motion to Amend the TRO and for Expedited Discovery (ECF No. 24) on September 26, 2024. Mr. Prusinowski further began preparing a more fulsome evidentiary record for the injunction hearing that was originally scheduled for October 7, 2024.

The parties began settlement negotiations in earnest on or about September 27, 2024. On October 3, 2024, the parties jointly moved to extend the TRO and continue the show cause hearing for four weeks. ECF No. 28. The Court granted the parties’ joint motion, extended the TRO, and set a preliminary injunction show cause hearing for November 1, 2024. ECF No. 32. Thereafter, the parties jointly contacted the Court’s deputy to request that the show cause hearing be moved to the week of November 12 because of scheduling conflicts. On October 10, 2024, the Court

granted the parties' request and moved the show cause hearing to November 12, 2024. ECF No. 34.

### III. The Court Should Allow Mr. Prusinowski to Use Non-Party Funds to Pay for Legal Fees Incurred to Date and to Prepare His Defenses for the Preliminary Injunction Show Cause Hearing

Mr. Prusinowski engaged defense counsel on September 18, 2024 (Declaration of Ryan Poteet ("R. Poteet Decl.") ¶ 4). On September 19 and 20, 2024, Defendant EEB transferred a total of $77,000 to defense counsel. R. Poteet Decl. ¶ 5. On September 19, 2024, non-party Atlas Fund Limited Partnership ("Atlas"), a partnership in which Mr. Prusinowski and his wife own two percent and serve as general partners, transferred $400,000 to defense counsel. R. Poteet Decl. ¶ 6. On October 4, 2024, defense counsel voluntarily transferred the $77,000 held on behalf of EEB to the Receiver. R. Poteet Decl. ¶ 7.

Mr. Prusinowski has incurred $231,358.50 in reasonable and necessary attorney's fees and costs since September 18, 2024. R. Poteet Decl. ¶ 8. This amount was incurred for, among other things, gathering evidence and preparing to submit an opposition to the FTC's TRO motion, preparing for the TRO hearing, complying with the TRO, including cooperating with the Receiver's requests, locating and identifying assets, and completing detailed financial disclosures and documents. R. Poteet Decl. ¶ 9. This amount also reflects the drafting and filing of a Motion to Dismiss, the drafting and filing of an Emergency Motion to Amend the TRO and for Expedited Discovery, the drafting of expedited discovery requests, and continued discussions with Mr. Prusinowski, the FTC, and the Receiver about relevant issues. R. Poteet Decl. ¶ 9. Defense counsel expects that Mr. Prusinowski will require an additional $150,000.00 in fees and costs to prepare for the November 12, 2024 preliminary injunction show cause hearing, continue advising Mr. Prusinowski during the pendency of the TRO and Receivership, and, if possible, negotiate an

acceptable settlement. R. Poteet Decl. ¶ 10.

The release of personal assets to provide for a legal defense, especially in anticipation of a preliminary injunction hearing, is necessary and appropriate given the interests at stake. *See FTC v. IAB Mktg. Assocs., LP*, No. 12-61830-CIV, 2013 WL 2433214, at *3 (S.D. Fla. June 4, 2013) (release of individual funds for attorneys' fees is appropriate because "the preliminary injunction hearing and the legal work leading up to it is a chance for a defendant to show that the FTC is not likely to prevail on the merits. So although the merits of an action are not finally resolved when a preliminary injunction is entered, a highly relevant finding concerning the merits is made at that point."); *FTC v. Think Achievement Corp.*, 312 F.3d 259, 262 (7th Cir. 2002) (stating that it is appropriate for a court to unfreeze individual funds for payment of attorneys' fees prior to court's determination as to which of the defendant's assets were legitimate or a product of fraud). Indeed, the FTC has stipulated to extend temporary restraining orders and to preliminary injunction orders that allowed for the use of individual defendant assets for the payment of attorney's fees and litigation costs. *See*, *e.g.*, *FTC v. Legion Media LLC et al.*, No. 8:24-cv-1459 (ECF No. 27), Joint Stipulation to Modify and Extend Temporary Restraining Order, at 3-4 (M.D. Fla. June 28, 2024) (despite asset freeze, allowing individual defendant $250,000 to pay for legal services and attorneys' fees); *FTC v. Big Dog Solutions, LLC*, No. 16-cv-6607 (ECF No. 53), Stipulated Preliminary Injunction, at Section 3(E) (N.D. Ill. July 28, 2016) (despite asset freeze, allowing individual defendants subject to prior written agreement with plaintiff to "pay from their individual personal funds reasonable, usual, ordinary, and necessary living expenses and attorneys' fees").

If the Court denies this motion and no funds are made available to pay defense costs from Atlas funds held in trust by defense counsel, Mr. Prusinowski will be effectively prevented from defending himself against serious allegations of defrauding consumers and conducting an unlawful

business operation in violation of the Business Opportunity Rule. This defense is of particular importance because the FTC has signaled that it intends to put EEB out of business. Moreover, the FTC seeks to impose significant individual liability on Mr. Prusinowski, and may pursue a lifetime ban from employment in his chosen industry despite the FTC having neither the authorization to do so nor seeking such relief in its complaint. This would be unjust, unfair, deprive Mr. Prusinowski of his Due Process rights, and undermine the lawfulness of the proceedings in this Court. *See FTC v. Next-gen, Inc.*, No. 4:18-CV-00128-DGK, 2018 WL 8754140, at *2 (W.D. Mo. Aug. 3, 2018) ("[T]he Court here 'does not believe that it could achieve a fair result at the preliminary injunction hearing were it to deny defendants the ability to retain counsel. This is a complex legal matter, and lawyers are essential to the presentation of issues related to it.'") (quoting *S.E.C. v. Dowdell*, 175 F. Supp. 2d 850, 856 (W.D. Va. 2001) (ordering submission of "reasonable estimates of fees necessary to take [defendants] through the hearing on the preliminary injunction").

Accordingly, Mr. Prusinowski requests the Court modify the TRO to unfreeze $231,358.50 in non-party Atlas funds held by defense counsel to pay for fees and costs incurred to date. Mr. Prusinowski further requests the Court unfreeze an additional $150,000.00 in non-party Atlas funds held by defense counsel to cover the expected fees and costs that are necessary to effectively prepare for the preliminary injunction show cause hearing.

## IV. Alternatively, if the Court Denies Mr. Prusinowski's Request to Unfreeze Additional Non-Party Funds to Prepare for the Preliminary Injunction Hearing, Defense Counsel, with Mr. Prusinowski's Consent, Request Leave to Withdraw as Counsel of Record

Pursuant to Pennsylvania Eastern District Local Rule 5.1(b), "[a]n attorney's appearance may not be withdrawn except by leave of the court, unless another attorney of this court shall at the same time enter an appearance for the same party." E.D. Pa. L. Civ. R. 5.1(c). In the absence

of substitute counsel, the decision to grant withdrawal is solely at the Court's discretion. *Wolgin v. Smith*, No. CIV. A. 94-7471, 1996 WL 482943, at *2 (E.D. Pa. Aug. 21, 1996) (citing *Ohntrup v. Firearms Center, Inc.*, 802 F.2d 676, 679 (3rd Cir. 1986)).

The Third Circuit has clarified that no rigid multi-factor test governs a district court's decision to allow attorney withdrawal. *Mifflinburg Tel., Inc. v. Criswell*, No. 4:14-CV-00612, 2015 WL 3454515, at *1 (M.D. Pa. May 29, 2015) citing *Ohntrup v. Makina Ve Kimya Endustrisi Kurumu*, 760 F.3d 290, 295 (3d Cir. 2014)). Rules regarding attorney withdrawal are necessarily general because of the context-laden nature of such determinations." *Id*. at *2 (internal quotations omitted).

Pursuant to Pennsylvania Rule of Professional Conduct 1.16(b), "a lawyer may withdraw from representing a client if: …(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled; [or] (6) the representation will result in an unreasonable financial burden on the lawyer…" Pa. Rule Prof'l. Conduct 1.16(b). "Where it is demonstrated that the client is indeed unable to pay accrued legal fees, courts have regularly permitted counsel to withdraw." *Health Monitoring Servs. of Am., Inc. v. Cardiac Telecom Corp.*, No. CIV.A. 06-0018, 2007 WL 1795659, at *1 (W.D. Pa. June 20, 2007); *see also FTC v. American Future Systems, Inc. et al.*, No. 2:20-cv-0266 (EFC No. 298) (granting counsel's request to withdraw for individual and corporate defendants in FTC action for inability to pay fees) (E.D. Pa. March 23, 2023). The court in *Mifflinburg Tel., Inc. v. Criswell*, held:

> At this juncture, the most appropriate resolution of this issue is to allow Counsel to withdraw from the case. Counsel has been placed in a difficult position due to the Client's failure to timely pay their legal fees. Although the Clients have made a good faith effort to pay the fees, and are paying as much as they realistically can afford, the costs of litigation are far outstripping the Clients ability to pay those costs. Unfortunately, this leaves Counsel in the difficult position of being forced to

> expend considerable time and resources without any genuine assurance of payment for services rendered.

2015 WL 3454515, at *1 (M.D. Pa. May 29, 2015).

If the Court denies the request to unfreeze additional non-party Atlas funds to enable defense counsel to effectively prepare for the preliminary injunction show cause hearing, defense counsel seeks to withdraw for three reasons.

**1. Mr. Prusinowski's Inability to Pay Legal Expenses**

Despite diligent efforts to obtain additional funds from family members and colleagues, Mr. Prusinowski has been unsuccessful in paying past or future legal expenses. Repeated requests for payment have gone unanswered, making it unlikely that Mr. Prusinowski will be able to tender payment in the future. There is also no assurance that the Court will unfreeze the additional Atlas funds, or unfreeze the necessary amount of Atlas funds, to enable defense counsel to zealously defend Mr. Prusinowski's interests at the preliminary injunction show cause hearing.

**2. Unreasonable Financial Burden on Defense Counsel**

Continuing the defense of this case without compensation would impose a severe financial strain on defense counsel. Multiple attorneys and staff will be required to dedicate substantial time and resources to the case. Without assurance that counsel will receive their usual and customary fees, they will be forced to proceed without any realistic hope of compensation, placing them in an untenable financial position.

**3. Minimal Prejudice to Mr. Prusinowski**

Given the early stage of litigation, the prejudice to Mr. Prusinowski from counsel's withdrawal would be minimal. Mr. Prusinowski, if able, could retain new counsel, and withdrawal would not affect ongoing settlement negotiations. The parties have already agreed to extend the TRO to facilitate these negotiations, so counsel's departure will not disrupt the status quo.

Additionally, Mr. Prusinowski consents to defense counsel's withdrawal should the Court deny his request for additional funds so that counsel can prepare for the preliminary injunction show cause hearing. R. Poteet Decl. ¶ 11.

Accordingly, if the Court denies Mr. Prusinowski's request to unfreeze an additional $150,000.00 in Atlas funds held by defense counsel so that counsel can prepare for the preliminary injunction show cause hearing, defense counsel respectfully request leave to withdraw as counsel of record for the defendants in this case.

**V. Conclusion**

For the foregoing reasons, Mr. Prusinowski requests the Court to modify the TRO to unfreeze $231,358.50 in non-party Atlas funds held by defense counsel to pay for legal fees and costs incurred to date. Mr. Prusinowski further requests the Court modify the TRO to unfreeze $150,000.00 in Atlas funds held by defense counsel to pay for legal fees and costs associated with preparing for the preliminary injunction show cause hearing, or, in the alternative, grant defense counsel's request for leave to withdraw as counsel of record for the defendants in this case.

Date: October 11, 2024

Respectfully submitted,

*/s/ Ryan M. Poteet*

Clair E. Wischusen (Bar No. 306752)
Ryan M. Poteet (*pro hac vice*)
Stephan R. Freeland (*pro hac vice*)
GORDON REES SCULLY MANSUKHANI, LLP
277 S. Washington Street, Suite 550
Alexandria, Virginia 22314
Tel. (202) 399-1009
Fax. (202) 800-2999
cwischusen@grsm.com
rpoteet@grsm.com
sfreeland@grsm.com

*Counsel for Defendant Peter Prusinowski*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 11th day of October 2024, a true and accurate copy of the foregoing was electronically filed via the Court's ECF system pursuant to the agreement of the Parties, and was thereby served upon all counsel of record.

By: *___/s/ Ryan M. Poteet___*
Ryan M. Poteet