UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>   Plaintiff,<br><br>      v.<br><br>EMPIRE HOLDINGS GROUP LLC, also d/b/a ECOMMERCE EMPIRE BUILDERS and STOREFUNNELS.NET, a limited liability company, and<br><br>PETER PRUSINOWSKI, aka PETER PRU, individually and as an officer of Empire Holdings Group LLC,<br><br>   Defendants. | Case No. 2:24-CV-4949-WB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** |

     Over the past three years, Empire Holdings Group LLC ("EEB") and Peter Prusinowski (collectively, "Defendants") have taken millions from consumers who relied on Defendants' false earnings claims when purchasing EEB's ecommerce programs, including the business opportunity to start a profitable ecommerce store built by EEB.

     In moving to dismiss the FTC's claims pertaining to their conduct (Doc. No. 23), Defendants do not argue that the FTC has failed to plausibly allege violations of the FTC Act and Consumer Review Fairness Act arising out of their deceptive earnings claims and use of non-disparagement provisions, respectively. Defendants move to dismiss only the FTC's claims under the Business Opportunity Rule ("the Rule") on the basis that in offering consumers what they marketed as a "Business In a Box," a "cash-flowing online business," and an "Ecom store Built and Launched by our team," they were not offering a "business opportunity." Defendants selectively ignore the allegations in the Complaint regarding the nature of the business

1

opportunity offered while selectively highlighting other services, which Defendants characterize as "ecommerce education" and "business consulting services" (Mot. at 3-4, 7). As is evident from the face of the Complaint, the FTC alleges only that Defendants' business opportunity—and not their self-study program—is subject to the Rule. (Compl. ¶¶ 13-30, 57).

Defendants cannot disregard the allegations in the Complaint, their own marketing materials, communications with customers, and the text of the Business Opportunity Rule, which all confirm that the FTC has plausibly alleged that Defendants market and sell business opportunities. The Court should deny Defendants' Motion.

I. **FACTUAL BACKGROUND**

In the Complaint, the FTC alleges that, since at least 2021, Defendants have been marketing business opportunities and online self-study programs. (Compl. ¶ 11). Defendants promote and sell a business opportunity whereby they build online stores for their clients that use a dropshipping model at different price points ranging between $10,000 and $35,000 over the course of their scheme. (Compl. ¶ 12, 15). Defendants offer this opportunity as "Done For You Services," a "Business in a Box" and their "Platinum Program." They further claim their "seven figure" or "eight figure" team will "build and launch" purchasers' "very own cash-flowing online business which will be "90% hands off" for the purchaser. (Compl. ¶ 13). Defendants also offer a self-study program (aka "Ecommerce Empire Academy") separately from the business opportunity program for the significantly lower price of between $997 and $1997. (Compl. ¶ 31-33).[1]

---

[1] The FTC's challenge regarding the marketing of Defendants' self-study program is only under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). *See e.g.,* Compl. ¶ 51; *see also* Compl. ¶ 57.

On Facebook, defendant Prusinowski advertised the business opportunity as "An E-commerce Business Built and Launched By Our Team." (Compl. ¶ 17). In an accompanying video, Defendants claim they will provide clients with a "10k/mo Ecom Store Built and Launched by our team." (Compl. ¶ 17). Defendants further claim they will complete all the necessary steps to provide clients with a "fully functional store." (*Id.*) They promise that "We'll Build, Launch & Bring In Sales To Your AI-Powered Ecommerce Business In The Next 30 Days!" (Compl. ¶ 23). Elsewhere in a training video, Prusinowski claims the businesses EEB builds are "powered by artificial intelligence to make your life easier." (Compl. ¶ 25).

In sales calls with prospective purchasers, Defendants' representatives claim that Defendants will build the entire business for clients, do "all the product selection, 100 percent for you," and ensure clients' businesses are selling products within a month. (Compl. ¶ 27). The representatives also claim consumers will bring in profits within 30 days of Defendants building clients' businesses. (Compl. ¶ 28).

After accounting for fixed costs needed to run and maintain EEB-built ecommerce stores, Defendants' clients' online stores often lose money. (Compl. ¶ 41). EEB fails to communicate with clients and offers poor explanations for underperforming stores. (Compl. ¶ 42). And numerous clients for whom EEB built stores have not generated sales close to what Defendants claimed they would. (Compl. ¶ 43).

Defendants have moved to dismiss Counts II–IV of the Complaint, wherein the FTC alleges that Defendants are subject to, and have violated, the Business Opportunity Rule.

---

("Defendants, as described in paragraphs 13 to 30, have made earnings claims in connection with the sale of their business opportunities, as defined by the Business Opportunity Rule, 16 C.F.R. § 437.1(f)).

3

(Compl. ¶¶ 54–67). Defendants have not moved to dismiss the FTC's claims for violations of the FTC Act and the Consumer Review Fairness Act (Counts I, V).

## II. LEGAL STANDARD

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing motions to dismiss, courts "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. ARGUMENT

Defendants' Motion to Dismiss should be denied because the FTC has sufficiently alleged that Defendants are sellers of business opportunities subject to the Business Opportunity Rule and that their conduct violated the Rule. Thus, the FTC has stated plausible claims under the Rule.

As Defendants recognize, the Business Opportunity Rule defines the covered business opportunities as a commercial arrangement in which:

(1) A seller solicits a prospective purchaser to enter into a new business;

(2) The prospective purchaser makes a required payment; and

(3) The seller, expressly or by implication, orally or in writing, represents that the seller or one or more designated persons will:

>> …
>
>> (ii) Provide outlets, accounts, or customers, including, but not limited to, Internet outlets, accounts, or customers, for the purchaser's goods or services[.]

16 C.F.R. § 437.1(c). "Providing locations, outlets, accounts, or customers means furnishing the prospective purchaser with existing or potential locations, outlets, accounts, or customers . . . or otherwise assisting the prospective purchaser in obtaining his or her own locations, outlets, accounts, or customers." *Id.* § 437.1(m). An "Internet outlet" can include a website used to engage in commerce with the public. *See FTC v. Money Now Funding, LLC*, No. CV-13-01583, 2015 WL 11120847, at *3 (D. Ariz. July 1, 2015) ("providing an Internet outlet in the form of a website on which small businesses could sign up and be referred by the consumer to [defendant] for cash advances" constitutes providing "outlets, accounts, or customers" under 16 C.F.R. § 437.1(c)(3)(ii)).[2]

Courts have found a likelihood of success on the merits of the FTC's Business Opportunity Rule claims for similar schemes where the Defendants provided business opportunities that included Internet outlets in the form of ecommerce stores. *See, e.g.*, *FTC v. The FBA Machine Inc.*, No. 2:24-cv-06635 (D.N.J. June 3, 2024); *FTC v. Ascend Capventures Inc., et al.*, No. 2:24-cv-07660 (C.D. Cal. Sept. 13, 2024); *FTC v. Automators LLC., et al.*, No. 3:23-cv-1444 (S.D. Cal. Aug. 11, 2023); *FTC v. AWS, LLC et al.*, No. 2:18-cv-00442 (D. Nev. Mar. 14, 2018). In these cases, as here, the FTC also alleged that Defendants promised to provide additional support services for the online storefront, such as the selection of products and

---

[2] Defendants do not dispute that providing a purchaser with an ecommerce website constitutes an Internet outlet under the Rule. Instead, they claim that Defendants offer a different service entirely—completely ignoring the allegations in the Complaint that Defendants promise to provide customers with an online storefront. *See, e.g.*, Compl. ¶¶ 12, 13, 17, 18, 27.

5

suppliers, order fulfillment, and customer service. *See e.g.,* Compl. ¶ 17, 25, 27. The cases cited above necessarily indicate the FTC stated plausible claims under the Business Opportunity Rule in each of those factually similar cases because "failure to state a claim upon which relief can be granted necessarily precludes a finding that Plaintiff has demonstrated a likelihood of success on the merits." *Woodson v. Colajezzi*, No. 12-cv-973, 2012 WL 4932022, at *4 (E.D. Pa. Oct. 16, 2012).

### A.  The FTC has sufficiently alleged that the Defendants provide "Internet outlets."

Defendants do not dispute that they (1) solicit a prospective purchaser to enter into a new business or that (2) the prospective purchasers make a required payment. Defendants argue only that the FTC fails to state a claim under the Rule because EEB does not "provide clients with any customers, outlet, or accounts" and thus they do not sell a business opportunity as defined by the Rule.[3] (Mot. at 7). The Business Opportunity Rule applies to a tee. Defendants consistently represent that they will provide purchasers an Internet outlet. *See, e.g.*, Compl. ¶¶ 12, 13, 17, 18, 27. Specifically, Defendants claim that they will provide clients with a "10k/mo Ecom Store Built and Launched by our team," *i.e.*, an Internet outlet. *See* Compl. ¶ 17.

Ignoring their marketing, operations, and creation of their business opportunity, Defendants conflate their two different services, and describe them all as "education, consulting, and software services." (Mot. at 3-4, 7). This inaccurate characterization cannot defeat the FTC's well-pleaded allegations that, for example, Defendants represented they will complete all the necessary steps to "hand [purchasers] a fully functional store."[4] *See* Section I. Further, to the

---

[3] Defendants also argue they do not offer a business opportunity because EEB does not "provide any kind of 'buy back' assistance." The FTC's claims do not rely on this portion of the business opportunity definition, 16 C.F.R. § 437.1(c)(3)(iii).
[4] *See supra* at n. 1.

6

extent Defendants' ecommerce business opportunity may include some aspects of its self-study program or provide additional ancillary services, does not make it any less of a business opportunity under the Rule.

Beyond alleging, as the Rule requires, that Defendants *represent* they will provide outlets, 16 C.F.R. § 437.1(c)(3)(ii), the FTC also alleges in the Complaint that Defendants *do indeed provide* Internet outlets for the purchasers. *See, e.g.*, Compl. ¶¶ 40–43. Defendants have built ecommerce stores for purchasers, though the stores ultimately fail to earn the promised profits or even lose money for the typical purchaser. *Id.*

The fact that Defendants separately also offer a self-study program at a fraction of the cost for the business opportunity or that Defendants offer ancillary services in support of their Internet outlets, provides no basis for the Court to overlook that they sell a business opportunity. Accordingly, Defendants are sellers of business opportunities and are subject to the Business Opportunity Rule.

### B.  The Rule's definition is not narrowed by the ANPR or the Chair's statements.

The only question before the Court is whether—assuming the allegations in the Complaint are true—the Rule plausibly applies to Defendants. It does. The plain language of the Business Opportunity Rule does not contain an exception for "ecommerce education and business consulting services." Instead, Defendants seize upon the Commission's 2022 Advanced Notice of Proposed Rulemaking Concerning the Business Opportunity Rule ("ANPR") and accompanying comments by the Commission Chair as somehow providing an exception. Their effort is unavailing.

In November 2022, the ANPR requested comment from the public "as part of its ten-year regulatory review plan." 87 Fed. Reg. 72428-01, 72428 (Nov. 25, 2022). As part of that review, the ANPR sought comment on whether the Rule should be expanded to include business

opportunities not covered by the rule. Far from excluding entire industries and services from the Rule's application, the ANPR recognized that **certain kinds** of business coaching, educational, and other programs may not be covered by the Rule because—unlike Defendants' operation—the programs do not "[p]rovide outlets, accounts, or customers, including, but not limited to, Internet outlets, accounts, or customers, for the purchaser's goods or services" and are not otherwise covered by the Rule.

In her statement, Chair Lina Khan explained the purpose and necessity of the Rule:

"The Business Opportunity Rule protects Americans from false promises of easy riches. A business opportunity may be pitched as a way for a buyer to immediately get a business up and running. The point of the rule is to make sure people know what they're getting into, with a realistic sense of how much they're likely to earn. It requires sellers to honestly disclose key information up front."

Chair Khan also explained:

The ANPR notes several varieties of scams that **may** fall outside the scope of the existing rule. These include **certain kinds of** business coaching and work-from-home programs, investment programs, and e-commerce opportunities. A classic example is someone selling an online course that purports to teach you how to make big profits trading stocks or cryptocurrency in your home—risk-free. These scams may not meet the precise definition of a business opportunity under the letter of the rule. But they can violate its spirit by luring consumers with false promises of easy money.

Chair Khan's statement did not and could not change the scope or application of the existing Rule. As noted above, simply because one program sold (deceptively) by Defendants does not implicate the current Rule, has no impact on its business opportunity, which plainly falls under the Rule. Defendants' deceptive marketing to sell its "Done For You" ecommerce storefront websites fits squarely within the Rule's application.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff FTC respectfully requests that the Court dismiss Defendants' Motion.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: October 16, 2024 | /s/Amanda Grier |

Amanda Grier (DC Bar No. 978573)
Ryan McAuliffe (MD Bar No. 2012170072)
Federal Trade Commission
600 Pennsylvania Avenue, NW, CC-8543
Washington, DC 20580
(202) 326-3745; agrier@ftc.gov
(202) 326-3044; rmcauliffe@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

9

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2024, I caused a copy of the foregoing Plaintiff's Opposition to Defendants' Motion to Dismiss Complaint to be served on all counsel of record by Operation of the Court's electronic filing system.

/s/Amanda R. Grier
Amanda R. Grier