# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | : <br> : <br> : Civil Action <br> : <br> : No. 2:24-cv-04949-WB <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| **Plaintiff,** | |
| v. | |
| **EMPIRE HOLDINGS GROUP LLC d/b/a ECOMMERCE EMPIRE BUILDERS d/b/a STOREFUNNELS.NET and PETER PRUSINOWSKI,** | |
| **Defendants.** | |

### RECEIVER'S RESPONSE TO DEFENDANTS' MOTION AND MEMORANDUM FOR FEES INCURRED TO DATE, AND ADDITIONAL FEES TO CONTINUE TO DEFEND OR, IN THE ALTERNATIVE, <u>TO WITHDRAW AS COUNSEL OF RECORD</u>

The Receiver, Kevin Dooley Kent, by and through his counsel, hereby responds to Defendants' Motion and Memorandum for Fees Incurred to Date, and Additional Fees to Continue to Defend Or, in the Alternative, to Withdraw as Counsel of Record (ECF No. 35) ("Motion for Attorney's Fees") for the limited purpose of addressing Gordon Rees Scully Mansukhani LLP's ("Gordon Rees") continued possession of, and asserted retaining lien on, a $400,000.00 retainer paid by Receivership Entity Atlas Fund Limited Partnership ("Atlas Fund"). The Receiver takes no formal position with respect to whether Defendants should be granted relief from the asset freeze to fund their defense from assets derived independently from the operations of Defendant Empire Holdings Group LLC ("EEB"); however, the Receiver respectfully submits that Atlas Fund's assets should be returned to the Receiver, and that to the extent fees are permitted, they should come from assets derived from sources other than the business operations of the Receivership Entities.

## I. FACTUAL HISTORY

After being served with notice of this action but presumably before the September 20, 2024 Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief (ECF No. 19) (the "TRO Order") was entered, Defendant Peter Prusinowski caused a total of $477,000 in soon-to-be-frozen funds to be transferred to Gordon Rees as payment for their retention and representation as counsel for Defendants in this matter. Specifically, EEB transferred $77,000.00 to Gordon Rees on September 19 and 20, 2024, and Atlas Fund paid the remaining $400,000.00 to Gordon Rees on September 19, 2024. Gordon Rees thereafter transferred $77,000.00 to the Receivership Account on October 7, 2024.[1]

While Defendants assert that Atlas Fund is "a partnership in which Mr. Prusinowski and his wife own two percent and serve as general partners," ECF No. 35 at 5, Atlas Fund's corporate documents indicate that Mr. Prusinowski is its sole general partner, and that the remaining 98% of Atlas Fund is owned by Atlas Fund Trust ("Atlas Trust"), which received its ownership interest in Atlas Fund, plus $10.00 cash, without any consideration.[2] *See* Receiver's October 14, 2024 letter identifying the Atlas Entities as Receivership Entities, attached hereto as Exhibit A. Mr. Prusinowski and his wife are both the Trustees (*i.e.*, controllers) and Settlors (*i.e.*, beneficiaries) of Atlas Trust. *See id.* at 2. Thus, in reality, Mr. Prusinowski has full ownership and/or control over Atlas Fund. *See id.*

On October 14, 2024, the Receiver identified Atlas Fund and Atlas Trust, along with Atlas Fund Land Trust ("Atlas Land") (collectively, "Atlas Entities") as Receivership Entities pursuant to Section XII, Paragraph U of the TRO Order. *See* Ex. A. The only response Defendants provided

---

[1] The Motion for Attorney's Fees states that EEB transferred the $77,000 to Gordon Rees on September 19, 2024 and September 20, 2024, but does not specify whether the September 20 transfer of funds occurred before or after the entry of the TRO Order. Nonetheless, since these funds have been returned to the Receivership Account, any potential technical violation of the TRO Order has since been cured through the return of these funds to the Receivership Account.

[2] Atlas Trust is a Probate Avoidance/Asset Preservation bridge trust established around the same time as Atlas Fund.

was an October 16, 2024 letter that Gordon Rees sent to the Receiver's counsel, advising that Gordon Rees is asserting a retaining lien as to $231,358.50 held in its trust account for attorney's fees incurred to date. A copy of Gordon Rees' October 16 letter is attached hereto as Exhibit B.

In its Motion for Attorney's Fees, Gordon Rees asserts that Mr. Prusinowski has "incurred $231,358.50 in reasonable attorney's fees and costs since September 18, 2024." ECF No. 35 at 5. The Motion for Attorney's Fees further requests an additional $150,000.00 for Gordon Rees' continued representation of Defendants. *See id.* at 7. However, the Receiver has been advised that Defendants have secured replacement counsel, Greg Christiansen at Guardian Law and Philip Martin at Vallis Legal, to represent them going forward, and that their representation has been secured with resources provided by others. Thus, even accounting for any unadjudicated claim for fees incurred, there is no colorable claim to the $168,641.50 balance remaining in Gordon Rees's trust/IOLTA account for future attorney's fees, and those funds should be immediately transferred to the Receivership Account. Even with respect to the $231,358.50 in fees that Defendants claim have already been incurred, ***all*** funds held by Gordon Rees should be transferred to and held in the Receivership Account, unless and until a ruling is made by this Court entitling Defendants to the payment of attorney's fees sourced from Receivership Assets.

## II.     LEGAL ARGUMENT

The Receiver respectfully submits that all $400,000 held in Gordon Rees's trust/IOLTA should be immediately transferred to the Receivership Account, and that those funds should be held in the Receivership Account unless and until this Court enters an order authorizing the release of Receivership Assets for the payment of Defendants' attorney's fees. The Receiver's position is based upon the following grounds:

***First***, even before Atlas Fund was identified as a Receivership Entity, its assets were subject to the asset freeze imposed by the TRO Order. The TRO Order prohibits "Defendants and their officers, agents, employees, and attorneys and all other persons in active con[c]ert or participation with any of them, who receive actual notice of" the TRO Order, from "transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets" that are owned or controlled by, held for the benefit of, or in the actual or constructive possession of, any Defendant or "any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant." TRO Order § III ¶ A. The assets of Atlas Fund fall squarely within this asset freeze, and had Defendants not arranged for payment of these assets to Gordon Rees before the TRO Order was entered, the TRO Order would have forbidden them from doing so.

***Second***, any business entity on notice of the TRO Order—including Gordon Rees—which has held, controlled, or maintained custody of "any Asset that has been owned or controlled, directly or indirectly by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant" is required to "[h]old, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assigning, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such . . . Asset, . . . except by further order of this Court." *Id.* § IV ¶ A. Thus, the TRO Order does not permit entities like

4

Gordon Rees to unilaterally encumber funds with a retaining lien, without first obtaining permission from the Court to do so.

*Third*, now that the Receiver has named Atlas Fund as a Receivership Entity, all Atlas Fund assets—including those held in Gordon Rees's trust/IOLTA account—must be immediately transferred to the Receivership Account pursuant to numerous provisions in the TRO Order. Section XIII, Paragraph A of the TRO Order provides that Defendants and "any other person with possession, custody, or control of property of . . . the Receivership Entities" and with notice of the Order are required to "fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets . . . of the Receivership Entities and immediately transfer or deliver to the Receiver possession, custody or control of . . . [a]ll assets held by or for the benefit of the Receivership Entities." Section XV provides that Defendants and the Receivership Entities, and their "officers, agents, employees, and attorneys" are required to "fully cooperate with and assist the Receiver" including transferring funds at the Receiver's direction." Finally, Section XVI, Paragraph A restrains and enjoins Defendants and the Receivership Entities, and their officers, agents, employees, and attorneys, from "[i]nterfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets . . subject to the receivership." Thus, allowing Gordon Rees to continue to hold these Assets, which belong to the Receivership Estate, would be inconsistent with the provisions of the TRO Order.

*Fourth*, allowing Gordon Rees to assert a retaining lien over funds held in its escrow/IOLTA account—sourced from Receivership Entity Atlas Fund—would be inconsistent with the provisions of the TRO Order relating to Non-Interference with the Receiver and the Stay of Actions. *See* TRO Order § XVI ¶ C (providing that Defendants and the Receivership Entities, and their officers, agents, employees, and attorneys, are restrained and enjoined from

5

"[t]ransferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities"); § XVII ¶ C (providing that "except by leave of this Court," during the pendency of the TRO, Defendants and their officers, agents, employees, and attorneys, are "enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets . . . of the Receivership Entities, including, but not limited to . . . [f]iling or enforcing any lien on any asset of the Receivership Entities; taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, whether such acts are part of a judicial proceeding, acts of self-help, or otherwise").

*Fifth*, absent an order specifically directing the Receiver to transfer certain Receivership Assets to/for the benefit of Defendants to fund their defense, allowing Gordon Rees to retain these funds creates policy and enforcement challenges across the board. There are numerous creditors/possessors of Receivership Assets who have failed to comply with the TRO Order in various ways, including by attempting to assert liens/security interests and/or refusing to transfer and/or drawing from Receivership Assets, and whose conduct the Receiver is currently challenging. *See, e.g.*, ECF No. 38 at 9, 13-15. Allowing Gordon Rees to hold these funds (including past attorney's fees) is inconsistent with the terms of the TRO Order in that it effectively allows them to avoid participating in any future creditor claims process and sets harmful precedent with respect to non-compliant entities whose conduct the Receiver will likely challenge before the Court in the near future, if the disputes as to their conduct cannot be resolved.

*Sixth,* to the extent the Court is inclined to allow the release of funds notwithstanding the asset freeze for the payment of attorney's fees, those funds should be derived from sources that

Defendants establish are unrelated to the business operations of EEB, and should not be sourced from Receivership Assets.

### III. CONCLUSION

Based on all the foregoing, the Receiver respectfully requests that the Court order all $400,000.00 paid by Atlas Fund to Gordon Rees, which is currently held in the Gordon Rees Trust/IOLTA Account, to be transferred to the Receivership Account in full, and that such funds shall remain in the Receivership Account unless and until the Court enters an Order directing the release of such funds for the payment of attorney's fees on behalf of Defendants. However, to the extent fees are permitted, the Receiver submits that those fees should be sourced from assets that Defendants establish are not derived from the business operations of the Receivership Entities.

Respectfully Submitted,

Dated: October 25, 2024

*/s/ Robin S. Weiss*
**CLARK HILL PLC**
Robin S. Weiss, Esquire
Vanessa L. Huber, Esquire
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Phone: (215) 640-8500
Fax: (215) 640-8501
Email: rsweiss@clarkhill.com
vhuber@clarkhill.com

*Attorneys for Receiver, Kevin Dooley Kent*