UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>EMPIRE HOLDINGS GROUP LLC, also d/b/a ECOMMERCE EMPIRE BUILDERS and STOREFUNNELS.NET, a limited liability company, and<br><br>PETER PRUSINOWSKI, aka PETER PRU, individually and as an officer of Empire Holdings Group LLC,<br><br>  Defendants. | Case No. 2:24-CV-4949 |

**PLAINTIFF'S OPPOSITION TO MOTION AND MEMORANDUM FOR FEES INCURRED TO DATE, AND ADDITIONAL FEES TO CONTINUE TO DEFEND OR, IN THE ALTERNATIVE, TO WITHDRAW AS COUNSEL OF RECORD**

I. Introduction

Plaintiff, Federal Trade Commission ("FTC"), opposes Defendants' request to pay attorneys' fees incurred to date, and future fees, out of the assets that are preserved pursuant to the Temporary Restraining Order entered on September 20, 2024, and extended on October 3, 2024, and October 10, 2024.[1] As the Receiver's Report (Doc. No. 38) confirms, consumers paid their hard-earned money to Defendants based on pervasive misrepresentations about Defendants' business opportunity. The law is clear: consumers should receive their money back. Unfortunately, the TRO has frozen only a small fraction of what would be needed to make

---
[1] Doc. Nos. 19, 32, 34.

1

consumers whole. Defendants' motion requests that this limited quantity be further depleted in order to release $231,358.50 for attorneys' fees incurred to date and $150,000 for future fees, which would drain an already shallow pool of funds that should be preserved for consumer victims. Further, Defendants are not legally entitled to use the frozen funds to support their representation, Defendants have other options for funding their defense, and Defendants have retained new counsel for the remainder of this matter who already has defended a deposition for them.

The FTC does not oppose the request of Gordon Rees Scully Mansukhani, LLP ("Gordon Rees") to withdraw as counsel of record if this Court denies Defendants' request to unfreeze additional funds. Defendants have retained the services of other counsel, Greg Christiansen and Philip Martin, who are being paid from funds not under the asset freeze.[2]

## II.     Facts and Procedural Background

In its Complaint (Doc. No. 1), the FTC charged Defendants with violating Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the FTC's Trade and Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule" or "Rule") 16 C.F.R. Part 437, as amended; and the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45b.[3] Along with its Complaint, the FTC filed an application for a temporary restraining order with supporting evidence.[4] After a hearing, this Court entered the TRO on September 20, 2024, freezing Defendants' assets and appointing Kevin Dooley Kent as temporary receiver ("the Receiver") over the Corporate Defendants, and scheduling a hearing regarding the FTC's request for a preliminary injunction on October 7, 2024.[5]

---

[2] Doc. No. 38 at 10 (Receiver's First Written Report).
[3] Compl. ¶ 1.
[4] Doc. No. 2.
[5] Doc. No. 19.

Defendants filed an Emergency Motion to Amend the TRO on September 25, 2024,[6] the Receiver and the FTC responded to this Motion on October 2, 2024,[7] and this Court denied Defendants' Motion on October 3, 2024.[8] On October 3, 2024, the FTC and Defendants filed a Joint Motion to Extend the TRO and Continue the Hearing to Show Cause Why A Preliminary Injunction Should Not Issue,[9] which this Court granted, and the preliminary injunction hearing is now set for November 12, 2024.[10]

Defendants claim that "immediately after the [TRO] hearing" they began complying with the TRO by meeting with the Receiver, and that they "gathered the requisite information and timely provided to the FTC and the Receiver" the required financial disclosures.[11] The FTC disputes this characterization. The Receiver's report describes the difficulties the Receiver encountered in taking over control of Defendants' business operations.[12] For example, the Receiver reported that Defendant Prusinowski delayed in responding to requests for information, responded "in a piecemeal fashion," and did not promptly respond to questions "until repeatedly [being] reminded to do so by the Receiver and his counsel."[13] The Receiver reported a delay of several days in securing Defendant Prusinowski's laptop and cellphone and also reported that "[t]here remains an open question regarding whether any data or information was deleted from these personal devices before they were turned over to the Receiver."[14] The Receiver also reported his inability to access some accounts due to "issues with Two-Factor Authentication codes sent to unknown and/or inaccessible email addresses and/or phone numbers, and/or

---

[6] Doc. No. 24.
[7] Doc. Nos. 26, 27.
[8] Doc. No. 29.
[9] Doc. No. 28.
[10] Doc. No. 34.
[11] Doc. No. 35 at 4.
[12] Doc. No. 38 at 44-45.
[13] Doc. No. 38 at 45.
[14] *Id.*; *see also* Doc. No. 38 at n. 15.

incorrect and/or non-functioning log-in credentials provided by Defendant Prusinowski,"[15] as well as "difficulties in promptly obtaining documents and information from certain third parties."[16] These third parties reported to Defendant Prusinowski before the Court entered the TRO, but still—five weeks after the entry of the TRO—present a major obstacle to the Receiver by refusing compliance with the Court's Order.

Also, on September 25, 2024, Defendants sent the FTC their initial financial disclosures, per Section V of the TRO.[17] The initial disclosures were incomplete.[18] Defendant Prusinowski did disclose a purported ownership interest in the Atlas Fund Limited Partnership ("Atlas Fund"). He further stated that on September 19, 2024, the Atlas Fund had transferred $400,000 to Gordon Rees as a legal retainer in this matter.[19] On October 14, 2024, the Receiver designated the Atlas Fund as a receivership entity.[20] Following this designation, on October 16, 2024, Gordon Rees retained a lien in the amount of $231,358.50 currently being held in Gordon Rees' trust account for attorneys' fee incurred to date.[21]

On October 22, 2024, the Receiver filed his first report.[22] In addition to the issues discussed above, the Receiver concluded that Defendants' business operations could not be conducted both legally and profitably.[23] The Receiver, *inter alia*, concluded in his report that "EEB's social media usage violates Section 5(a) of the FTC Act," "EEB's social media posts constitute 'unfair or deceptive acts,' as a substantial amount of the social media posts include or

---

[15] Doc No. 38 at 12.; *see also* Doc No. 38 at 18 ("The Receiver has been unable to access the non-financial account ActiveCampaign, which is a customer experience automation platform…because EEB has not provided the correct log-in credentials despite multiple requests for such.").
[16] *Id.*
[17] Doc No. 19.
[18] Defendants provided an email update to their initial disclosures on October 24, 2024.; *see* PX 14 ¶ 6.
[19] PX 11, ¶ 12.
[20] Doc. No. 38, Exhibit B.
[21] PX 13.
[22] Doc. No. 38.
[23] Doc. No. 38 at 1, 36-44, 46.

display statements that fit within the definition of deceptive 'Earnings Claims[,]'" and "EEB has violated the Business Opportunity Rule[.]"[24] Critically, "Defendant Prusinowski told the Receiver that EEB does not keep records of its customer's own sales data, thereby rendering EEB incapable of providing substantiation that the Earnings Claims made in its social media posts are 'representative of what consumers will generally achieve.'" 16 C.F.R. § 255.2.[25]

### III. The Court Should Deny Defendants' Request to Use Frozen Funds to Pay for Legal Fees

#### a. Frozen Assets Should Be Preserved

The FTC does not dispute that Gordon Rees may seek payment from Defendants for services rendered. Rather, the issue before the Court is to what extent Defendants should be allowed to use frozen funds for the payment of large quantities of attorneys' fees that Defendants state they have incurred to date, in addition to future fees.

The asset freeze in this case was proper,[26] and district courts have the discretion to determine whether to award attorneys' fees out of frozen assets.[27] A key factor courts have considered when weighing whether to release frozen funds is whether the frozen funds are likely to be sufficient to pay Defendants' anticipated liability.[28] Where, as here, the frozen assets fall

---

[24] Doc. No. 38 at 39.
[25] Doc. No. 38 at 39-40.
[26] Doc. No. 29 (Order Denying Defendants' Emergency Motion to Amend/Correct TRO Order); Doc. No. 27 (FTC's Response in Opposition to Defendants' Emergency Motion To Amend TRO); *SEC v. Infinity Grp. Co.*, 212 F. 3d 180, 197 (3d Cir. 2000) (citing *CFTC v. Am. Metals Exch. Corp.*, 991 F. 2d 71, 79 (3d Cir. 1993) ("A freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets.")).
[27] *Am. Metals Exch. Corp.*, 991 F. 2d. at 79-80 (allowing freeze to "remain in effect until the district court determines whether it can make an informed determination of the amount of unlawful proceeds retained" by Defendant, after which "the district court can decide to maintain, remove or modify the freeze."); *Id.* ("While we recognize that [defendant's] lawyers should be reimbursed for their efforts on his behalf, we do not find the district court's failure to disturb the freeze to be an abuse of discretion."); *Infinity Grp*. Co. 212 F. 3d. at 197 ("In *American Metals,* we found no abuse of discretion where the district court denied a request to pay attorney's fees from frozen assets where it was shown that the defendant had access to other funds not in receivership. Accordingly, we do not find abuse of discretion here.")).
[28] *See CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) ("courts regularly have frozen assets and denied attorney fees or limited the amount for attorney fees" to protect the integrity of disputed assets and ensure

far short of the approximate liability, courts have regularly denied requests for fees, or limited the amount for such fees.[29] The FTC respectfully submits that this Court should exercise its discretion by denying Defendants' Motion.

### b. The Frozen Funds Are Not Sufficient for Potential Relief to Injured Consumers

Since 2021, Defendants have taken in approximately $21,800,000 in revenue through perpetrating their scheme.[30] Of this revenue, the FTC estimates that Defendants' potential monetary liability is over $9 million for Business Opportunity Rule violations between January 1, 2021 and February 29, 2024.[31] As of October 20, 2024, the total balance in the Receivership Account was $1,308,273.25,[32] and Prusinowksi has approximately $753,542.46 in personal

---

that such assets are available for final monetary redress) (quoting *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989); *CFTC v. Morse*, 762 F.2d 60, 63 (8th Cir. 1985) ("the report of the receiver indicates that the funds remaining in the estate will not be sufficient to pay all the claims of defrauded customers", thus "it would be inequitable to further deplete these funds to pay the attorneys retained by [defendant] in his attempt to avoid paying his customers."); *FTC v. Lainer Law, LLC*, No. 3:14-cv-786-34PDB, 2015 WL 9302786, at *3 (M.D. Fla. Dec. 22, 2015) (denying defendant's request to vacate asset freeze so defendant could obtain legal counsel because it was "extremely unlikely that [the] assets will be adequate to redress any consumer injuries," and "the likelihood that attorney's fees would consume a significant portion, if not all of what little assets remain."); *FTC v. RCA Credit Servs., LLC* , No. 08-cv-2062, 2008 WL 5428039, at *4 (M.D. Fla. Dec. 31, 2008) ("if the frozen assets fall short of the amount needed to compensate consumers for their losses, a court is within its discretion to deny an application for living expenses and attorney fees."); *FTC v. Elite IT Partners, Inc., et al.*, No. 2:19-cv-00125 (D. Utah Apr. 5, 2019) (ECF No. 70) (denying defendants' request for attorneys' fees because, *inter alia*, defendants failed "to supply evidence that the release of receivership assets is necessary to mount a legal defense," and "the amount needed to redress alleged victims dwarfs the amount of receivership assets currently available."); s*ee also SEC v. Hvizdzak Cap. Mgmt., LLC*, *et al*, 2023 WL 202206, at *2 (W.D. Pa. Jan. 17, 2023) (one factor commonly considered in securities cases when evaluating a defendants' request to release frozen assets is "whether the frozen assets fall short of the amount necessary to compensate victims of the alleged scheme."); *SEC v. Forte*, 598 F. Supp. 2d. 689, 692-93 (E.D. Pa. 2009) ("It does not appear that the frozen assets will remotely cover the lost investments…given the paltry assets that remain to compensate defendant's alleged victims, any release of funds seem unwarranted.")).
[29] *See* supra at n. 29.; *Hvizdzak Cap. Mgmt.*, 2023 WL 202206, at *3 ("The percentage of the investors' funds requested to be unfrozen and redirected for Defendants' attorneys' fees is irrelevant. Rather, the appropriate inquiry is whether sufficient assets remain to cover the investors' losses.").
[30] Doc. No. 38 at 1, 31; *see also* PX 3 at ¶ 9 (Prefiling, FTC calculated that revenue was at least $14,326,961 during the shorter time period from January 1, 2021 to February 29, 2024).
[31] PX 12 at ¶ 10; This amount will likely rise further as the period of March 1 to September 20, 2024, will be added to the amount of harm as well as monetary relief for Defendants' violations of the CRFA—which have not yet been included in the total harm amount. 15 U.S.C. § 45b(d); Compl. at ¶¶ 1, 72, 74.; Doc. No. 2 at n. 102; Doc. No. 27 at 5.
[32] Doc. No. 38 at 33; Doc. No. 38, Exhibit D.

6

assets frozen.[33] Thus, the total amount of assets available in the Receivership estate and frozen in either Defendant Prusinowski's personal accounts or the Gordon Rees account is $2,447,086.35. This is only approximately 26% of the potential liability Defendants are facing in this matter, even based on the FTC's current conservative estimate.

### c. Defendants Are Not Entitled to Use Victim Funds to Pay Attorneys' Fees

Defendants have no right to use the frozen funds to pay attorneys' fees. In light of the Supreme Court's decisions in *U.S. v. Monsanto*, 491 U.S. 600 (1989) and *Caplan & Drysdale, Chartered v. U.S.*, 491 U.S. 617 (1989), there cannot be "any doubt as to the constitutionality of freezing assets and precluding…their use for payment of attorneys' fees."[34] "Just as a bank robber cannot use the loot to wage the best defense attorney money can buy, so a swindler…cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime."[35] "[W]hile parties to litigation generally may spend their resources as they see fit to retain counsel, they may not use their victims' assets to hire counsel to help them retain the fruits of their violations."[36]

Defendants specifically request access to $400,000 of frozen funds[37] to pay their legal bills, and purportedly fund their continued defense. Here, the money in question was taken from the Atlas Fund, which the Receiver rightfully designated as a receivership entity on October 14, 2024.[38] This money could clearly be used for potential consumer redress, and should not be accessed and squandered to pay attorneys' fees incurred during the infancy of this litigation.

---

[33] PX 14 at ¶ 8.
[34] *World Wide Factors*, 882 F. 2d at 347.
[35] *SEC v. Quinn*, 997 F. 2d 287, 289 (7th Cir. 1993).
[36] *RCA Credit Servs.*, 2008 WL 5428039 at *4 (citing *Quinn*, 997 F.2d at 289).
[37] The $400,000 in question was transferred after Defendants received notice of the lawsuit. PX 11, ¶ 12; Doc. No. 38 at 10.
[38] Doc. No. 38, Exhibit B.

### d. Defendants Have Other Options

Defendant Prusinowski has the means to pay his attorneys' fees through alternate, gainful employment or seeking the assistance of friends and family. Indeed, he is doing just that in paying different counsel.[39] The TRO conduct provisions prohibit him from violating certain obligations that already exist under the law, but do not stop him from earning a living by lawful means.[40] Also, the asset freeze does not affect any assets acquired after the entry of the TRO that are not derived from activities that are the "subject of the Complaint in this matter or that [are] prohibited by this Order."[41]

The record plainly shows Defendant Prusinowski is able acquire funds from non-frozen assets.[42] Nothing bars Defendant Prusinowski from further tapping the sources already providing funds, pursuing gainful employment with other businesses, or using other family or business connections to pay attorneys' fees.[43] Besides one conclusory statement in their Motion,[44] Defendants have made no reasonable attempt to show that they are unable to acquire funds from sources other than the assets the Court has currently frozen. Defendant Prusinowski has not put anything on the record under oath regarding his efforts to obtain funds to pay Gordon Rees. In sum, Defendants have other options, and should not be allowed to satisfy any obligation to their

---

[39] Doc. No. 38 at 10 ("The Receiver has also been advised that Defendants have secured replacement counsel, Greg Christiansen at Guardian Law and Philip Martin at Vallis Legal. Their representation has been secured with resources provided by others."). It is remarkable that Defendants here seek nearly $400,000 in legal fees for one set of counsel, while paying another. The fact that money is available for payment to Defendants' new counsel is a basis to deny the request for fees from frozen funds.
[40] Doc. No. 19 at 4-7.
[41] *Id.* at 5-7.
[42] *See* supra at n. 39; *see also* infra at n. 43.
[43] Doc No. 38 at n. 12 ("The Receiver has excluded from this list Defendant Prusinowski's personal Charles Schwab Platinum Card (x91000)…the TRO Order does not forbid Mr. Prusinowski from incurring charges on personal credit cards. *See* TRO Order § III ¶ C & § IV ¶ A.").
[44] Doc. No. 35 at 9.

attorneys using funds that are being held for possible use to provide partial refunds to injured consumers.

### IV.     Gordon Rees' Request to Withdraw as Counsel of Record

The FTC does not oppose Defendants' request to withdraw as counsel of record if this Court denies Defendants' request to unfreeze additional funds. On October 10, 2024, the FTC was contacted by Defendants' new counsel Greg Christiansen and Philip Martin. Further, on October 18, 2024, Defendants' new counsel confirmed that they would be lead counsel on this case going forward, including by defending upcoming depositions. New counsel's position as lead counsel also raises significant questions about the $150,000 request for future fees for Gordon Rees.

### V.     Conclusion

For all the foregoing reasons, Plaintiff urges this Court to deny Defendants' Motion in its entirety.

Respectfully submitted,

Dated: <u>October 25, 2024</u>                    <u>/s/ Ryan McAuliffe</u>

Amanda Grier (DC Bar No. 978573)
Ryan McAuliffe (MD Bar No. 2012170072)
Federal Trade Commission
600 Pennsylvania Avenue, NW, CC-8543
Washington, DC 20580
(202) 326-3745; agrier@ftc.gov
(202) 326-3044; rmcauliffe@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2024, I caused a copy of the foregoing Plaintiff's Opposition to Defendants' Motion and Memorandum for Fees Incurred to Date, and Additional Fees to Continue to Defend, or in the Alternative, to Withdraw as Counsel of Record to be served on all counsel of record by Operation of the Court's electronic filing system.

/s/Ryan McAuliffe
Ryan McAuliffe