# PX 12

## DECLARATION OF RUFUS L.M. JENKINS
## PURSUANT TO 28 U.S.C. § 1746

I, Rufus L.M. Jenkins, hereby state that, unless otherwise specified, I have personal knowledge of the facts set forth below, and if called as a witness, would testify competently thereto as follows:

1. I am a United States citizen over the age of 18. I am employed by the Federal Trade Commission ("FTC") as a forensic accountant in the Bureau of Consumer Protection's Division of Litigation Technology & Analysis ("DLTA"). I have worked with the FTC since April 2019, first in the Bureau of Consumer Protection's Division of Financial Practices as an investigator and, starting in October 2020, in DLTA as a forensic accountant. Before that, I worked for eight years in a forensics practice at one of the Big Four public accounting firms. I earned my Master of Accountancy and Master of Business Administration from Mercer University. I am a licensed Certified Public Accountant and a Certified Fraud Examiner. My office address is 600 Pennsylvania Avenue, NW, Mail Stop CC-9111, Washington, DC 20580.

2. In my capacity as a forensic accountant at the FTC, I was assigned to work on the FTC's investigation of Empire Holdings Group LLC, also doing business as Ecommerce Empire Builders and Storefunnels.net, (collectively, the "Corporate Defendant") and Peter Prusinowski, also known as Peter Pru, (the "Individual Defendant"). Throughout this declaration, I will refer to the subjects of the FTC's investigation collectively as "Defendants." FTC Counsel informed me that the Defendants sell online business opportunity services that can exceed $2,000.00.

3. This declaration sets forth my analysis of the net revenue received by the Defendants from their business opportunity services.

4. Pursuant to compulsory process issued by the FTC, the FTC obtained account records from Stripe, PayPal, and TD Bank relating to the Corporate Defendant's payments

received, payments sent, deposits, withdrawals, refunds, reversals, and chargebacks from January 1, 2021 to February 29, 2024 (the "relevant time period"). I have access to and maintain true and correct copies of all the records that I reviewed.

5. The account records produced by Stripe and PayPal include, among other things, counterparty information, unique transaction identifiers, dates, amounts (the Stripe amounts are in cents which I converted to dollars and cents), an indication of whether a transaction was a debit (money out) or credit (money in), and, usually, a brief reason for a transaction.

6. For the Corporate Defendant's TD Bank accounts, summaries for activity up through February 29, 2024 were prepared using a financial investigation tool from Actionable Intelligence Technologies, Incorporated, called "Comprehensive Financial Investigations Solution" ("CFIS"). Numerous other government agencies also use CFIS, including, but not limited to, the Internal Revenue Service, the FBI, the Organized Crime Drug Enforcement Task Force, several U.S. Attorney's offices, and the United States Secret Service. Among other things, CFIS uses proprietary technology to convert paper and/or electronic account records from financial institutions into an investigative database that can be searched, analyzed, and used to issue a variety of reports, Microsoft Excel spreadsheets, and other exhibits.

7. The first step in using CFIS is to load the relevant account statements. After the statements are loaded, CFIS imports and processes the statements using Intelligent Document Analyzers that rely on proprietary algorithms and Optical Character Recognition technology to create a searchable database. Intelligent Document Analyzers are document format readers associated with a particular bank or financial statement. After a statement has been indexed and processed, the CFIS database record for that statement is reconciled in CFIS with the original version of the statement obtained in the proceeding (*i.e.*, the statement produced by a bank or

financial institution) to ensure accuracy of its details, such as the account a transaction is associated with, the date a transaction posted to an account, the transaction amount, transaction category codes, and whether the transaction is an inflow or outflow of funds.

8.  In the instant matter, CFIS was used to generate a table containing the financial transactions for each of the Corporate Defendant's TD Bank accounts. The table was then exported into Excel. A review of the transactions within the Excel spreadsheet along with, in numerous instances, the underlying data, including copies of deposited items, checks paid, and wire notices, allowed counterparties to be identified. Counterparties were then researched, using publicly available information, to better understand whom money flowed to or from and to help make connections. In numerous instances, a brief description of the nature of a transaction (*e.g.*, "merchant credit" or "apparent consumer deposit") or, in some instances, a remark (*e.g.*, "asset diversion") was included to add clarity and aid in identifying sources and uses of funds. Details of checks paid were also entered into the Excel spreadsheet.

9.  I reviewed the documents from Stripe, PayPal, and the summaries created of the TD Bank accounts to summarize the Defendants' revenue, refunds, chargebacks, reversals, and net revenue related to business opportunity services during the relevant time period.

### Net Revenue of Business Opportunity Services

10. I calculated the estimated net revenue the Defendants received in their accounts at Stripe, PayPal, and TD Bank from their sale of online business opportunity services during the period January 1, 2021 through February 29, 2024. By my calculation, I estimate their combined net revenue is around $9,247,627.73 during the relevant time period. I summarize the net revenue in the table below.

| Item Count | Defendant | Financial Service Provider\Last 4 Characters of Account | Gross Revenue | Chargebacks\Reversals\Refunds | Net Revenue |
|---|---|---|---|---|---|
| 1 | Ecommerce Empire Builders | Stripe – AsdA | $7,539,149.30 | ($336,190.99) | $7,202,958.31 |
| 2 | Empire Holdings Group LLC | TD Bank – 9912 | 1,210,798.83 | 0.00 | 1,210,798.83 |
| 3 | Empire Holdings Group LLC | Stripe – SXHp | 729,679.03 | (28,671.58) | 701,007.45 |
| 4 | Empire Holdings Group LLC | PayPal – 3916 | 286,855.09 | (153,991.95) | 132,863.14 |
| | | Grand Total | $9,766,482.25 | ($518,854.52) | $9,247,627.73 |

11.  Beginning with Stripe records, I added up the amounts in the "Transactions" tab, relying on the column headers "date_and_time," "amount_cents," "description," "name_provided," "email_provided," "address_line_1," and "customer_ip_address." After finding transactions associated with the Individual Defendant's name, email address, and current or previous addresses, I identified other transactions that list the same IP addresses.[1] Some of these transactions indicated they were a test. Therefore, I identified others designated as a test. I excluded payments to and from the Individual Defendant, transactions with the same IP address as the Individual Defendant, and test transactions. Transactions were frequently in common amounts and, in numerous instances, included a description of an online business opportunity service, such as "storefunnel," "100 Winning Products," "sales funnel," "funnel review," or "automated email." I also added up amounts of transactions when the description included "invoice," "subscription creation," "null," "payment to peterpru.com," or "Peter Pru Empire Builder" and the payment received exceeded $2,000.00. From this amount, I deducted funds linked to the purchase of a business opportunity service that were returned to consumers during the relevant time period shown in the "Refunds" and "Chargebacks" tabs. In Refunds, I relied upon the data in the column header "charge_id," "refund_date," and "refund_amount_cents." I also created formulae that uses a VLOOKUP function to find refunds associated with the

---

[1] An IP (Internet Protocol) address is a uniquely-identifying string of numbers assigned to each Internet-connected device or any device connected to a network.  *See* https://www.whatismyip.com/.

revenue identified above or that have the same charge ID as one of the transactions identified as associated with the Individual Defendant. Since the Defendant-related revenue was excluded, I left out the refunds connected to the Individual Defendant, too. In Chargebacks, I relied upon the data in the column header "date_and_time_of_dispute," "request__amount_in_usd," and "status." It is my understanding that chargebacks "lost" result in payments to consumers from the Defendants. I also created a formula that uses a VLOOKUP function to find chargebacks associated with the revenue identified above. My calculation is based on the gross receipts; in other words, I did not subtract any fee that Stripe charged to use its service. During the relevant time period, by my calculation, I estimate that through Stripe the Defendants received $8,268,828.33 and returned $364,862.57, for a net of $7,903,965.76, associated with their sales of business opportunity services.

      12.    Continuing with the PayPal data, I added up the US dollar equivalent amounts of payment inflows (credit) into the PayPal accounts based on the column headers "Parent Txn ID," "Updated Date," "Balance Impact [Fiat]," "Transaction Type," "Status," "Item Title," "Subject," "Notes," and "Counterparty Name." Furthermore, I totaled the "parent" transactions with a Status of "completed" or "reversed" and that were updated during the relevant time period. These inflows were frequently in common amounts and, in numerous instances, included a description of an online business opportunity service, such as "store," "platinum," "funnel," "100 Winning Products for $1," "rabbit," "automated ads," "automated email," "fast track 3 months," or "inner circle" in Item Title. I also added up transactions with a blank Item Title when the transaction amount is greater than $2,000.00. From this amount, I deducted chargebacks and reversals of the revenue identified above as well as refunds during the relevant time period, relying on some of the same column headers as above. First, I totaled the outflows (debit)

designated as a "chargeback," "payment refund," or "Instant Payment Review (IPR) reversal" Transaction Type. Second, I added up the outflow of payments regarding a refund according to the Item Title or Note. I excluded payments to and from the Individual Defendant. My calculation is based on the gross receipts; I did not subtract any fee that PayPal charged to use its service. During the relevant time period, by my calculation, I estimate that through PayPal the Defendants received $286,855.09 and returned $153,991.95, for a net of $132,863.14, associated with their sales of business opportunity services.

13.     Moving to the TD Bank data, I calculated the amount of funds the Defendants received due to the likely sale of their business opportunity services. To do this, I totaled amounts from wires that do not specifically reference an "online course" or "accelerator program." Wires were frequently in common amounts that exceeded $2,000.00 and, in numerous instances, included a description of a business opportunity service, such as "funnel" or "business in a box," as the reason for the payment. The wires were from a mix of individuals and businesses. During the relevant time period, by my calculation, I estimate that through TD Bank the Defendants received $1,210,798.83 and returned $0.00, for a net of $1,210,798.83, associated with their sales of business opportunity services.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of September 2024.            *Rufus L. M. Jenkins*
                                                     Rufus L.M. Jenkins