IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____
                                                    )
FEDERAL TRADE COMMISSION,        )
                                                    )
    Plaintiff,                                  )
                                                    )
    v.                                              )   Case No.  2:24-CV-4949
                                                    )
EMPIRE HOLDINGS GROUP LLC, and )
PETER PRUSINOWSKI Individually and as )
officer of Empire Holdings Group LLC,    )
                                                    )
    Defendants.                              )
_____ )

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION
## FOR FEES TO DATE AND TO WITHDRAW AS COUNSEL OF RECORD

The FTC's Opposition (ECF No. 41) argues that Mr. Prusinowski's Motion (ECF No. 34) should be denied since the FTC concludes he has no defense, may not have tried to locate other funds, and has not respected the TRO. The FTC is wrong. Contrary to the FTC's legal argument, this Court expressly declined to find a likelihood of success on the BOR claims, the FTC admits in APA rulemaking that the current BOR does not apply to e-commerce education and consulting, and Mr. Prusinowski and EEB are not liable for consumer redress on the BOR claims. Contrary to the FTC's factual recitation, the subject funds came from a non-party that was not a Receivership Entity until after the legal fees were incurred, Mr. Prusinowski has tried to locate other funds from all possible sources, and he has diligently complied with the TRO. Finally, even if the FTC were somehow entitled to consumer redress, none of the FTC's authority demonstrates that Mr. Prusinowski should be denied funds for his defense.[1]

---

[1] Because Greg Christiansen, Esq. is substituting in as Defendants' counsel, this Motion no longer seeks $150,000 in fees for future work, even though undersigned counsel has done additional work and incurred additional fees beyond $231,358.50 since the Motion was filed.

1

**I.   Non-Party Atlas LP Monies**

To understand how misguided the FTC's Opposition is, it is important to consider the factual developments leading to the instant Motion.  On September 18, 2024, Mr. Prusinowski received an email from the FTC notifying him that he and EEB were named as defendants in a lawsuit. Given the immediate need for legal defense, non-party Atlas Fund Limited Partnership ("Atlas LP") transferred $400,000 to Mr. Prusinowski's attorneys. Notably, Atlas LP was not named or mentioned in the Complaint, nor has it ever conducted any business related to the advertising, marketing, or sale of Defendant EEB's products or services. These non-party funds were transferred to defense counsel prior to the TRO on September 20, 2024, with the express purpose of covering defense costs for Mr. Prusinowski and his company in this litigation.

Beginning September 20, 2024 and continuing up to the present, Mr. Prusinowski has made extensive and ongoing efforts, approaching friends, family, and professional acquaintances, in an attempt to obtain funds to support his defense and to support his family. Prusinowski Decl. ¶¶ 8-14. Unfortunately, Mr. Prusinowski has had next to no success. Prusinowski Decl. ¶¶ 9-10, 14-18. On October 11, 2024, Mr. Prusinowski's counsel filed the instant Motion, requesting that the Court allow the release of $231,358.50 in funds transferred from Atlas LP to defense counsel to cover necessary attorney's fees and costs incurred between September 18 and October 11, 2024. It was only on October 14, 2024, *after* these fees were incurred and the instant Motion was filed, that the Receiver designated Atlas LP as a Receivership Entity. This designation was made despite the fact that Atlas LP did *not* "conduct any business related to the advertising, marketing, [or] sale of [EEB's] Products or Services." ECF No. 19, Definition J (defining a "Receivership Entity").

Further, in light of the work performed between September 18 and October 11, 2024 and thus prior to October 14, 2024, defense counsel had already established a retaining lien in the amount of $231,358.50 held in defense counsel's escrow account through operation of

2

Pennsylvania law. *See Smyth v. Fidelity & Deposit Co.*, 190 A. 398, aff'd, 192 A. 640 (Pa. 1937) ("right of an attorney to ... deduct his fees out of money which he has in his hands belonging to his client, and pay over the balance, is well recognized and enforced in Pennsylvania.") (collecting cases); *Berger Realty Group, Inc. v. Pullman*, 1986 WL 7418, *1 (E.D. Pa. June 25, 1986) ("A retaining lien is a common law lien of an attorney recognized under Pennsylvania law which attaches to all property, papers, documents and monies of the client coming into the attorney's hands during the course of his employment as security for fees and expenses due the attorney in connection with the professional relationship between attorney and client.") (citing *In re Professional Hockey Antitrust Litig.*, 371 F. Supp. 742, 747 (E.D. Pa. 1974)).

Contrary to the FTC's assertions, there is nothing improper about Atlas LP providing funds to defense counsel for Mr. Prusinowski's defense prior to the TRO. Likewise, there is nothing improper about defense counsel having a retaining lien on funds received for services rendered, especially since Atlas LP was not a Receivership Entity when the lien was established. The FTC cites no authority that would justify denying Mr. Prusinowski's Motion on these facts.

**II.    The FTC Wrongly Assumes the Court's TRO Confirms Its Likelihood of Success on the Business Opportunity Rule Claims**

The premise of the FTC's Opposition is that the Court should deny Mr. Prusinowski's Motion because the FTC will prevail on its BOR claims, the FTC will seek consumer redress on its BOR claims, and there may be insufficient assets to satisfy any potential judgment for consumer redress. Put differently, the premise of the FTC's Opposition is that the Court should deny Mr. Prusinowski's Motion because he has no defense and the FTC is certain to recover a large monetary judgment. Indeed, the FTC even goes so far as to say that Mr. Prusinowski "should not be allowed to satisfy any obligation to [his] attorneys using funds that are being held for possible use to provide partial refunds to injured consumers." Opp'n 8-9.

3

The FTC disregards the Court's prior holding with the TRO. The Court explained in plain language that "[t]he reason underpinning the asset freeze is ***not*** in order to make sure that money can be maintained to pay out individuals who may have been harmed or whose money it is. … It is to maintain the status quo." Hr'g Tr. at 65:21-25 (emphasis added); *see also* Hr'g. Tr. at 45:21-22, 50:18-2, 66:9-10. At the TRO hearing, the Court explicitly stated that it made no findings on the merits of the FTC's BOR claims, acknowledging that "[t]he world could change in the Preliminary Injunction" when the Court would address the merits of that claim. *Id*. at 45:21-22; *see also* 50:18-2, 66:9-10. The premise of the FTC's Opposition is actually undercut by the TRO.

The FTC's BOR claims are the sole basis for the FTC's request for consumer redress. The Court has never indicated that the FTC has a likelihood of success on these claims. If the FTC once again cannot show that e-commerce education and consulting services fall within the scope of the BOR – an argument it conceded in its APA rulemaking – then there should be no asset freeze whatsoever. *See* Def's Opp'n FTC's TRO Motion 7-11 (ECF No. 16); Def's Motion to Dismiss 6-9 (ECF No. 23). Therefore, the FTC's primary argument against allowing Mr. Prusinowski's to use non-party assets to cover his legal fees fails.[2]

---

[2] The fact that the FTC is being opportunistic and that the BOR does not apply here is underscored by the FTC's settlement with Lyft, which was filed and announced Friday, October 25, 2024. *See United States v. Lyft, Inc.*, Case No. 24-cv-7443 (N.D. Cal.) and the Commission's press release entitled, *FTC Takes Action to Stop Lyft from Deceiving Drivers with Misleading Earnings Claims*, attached as Exhibit 1 to the Declaration of Ryan M. Poteet. Notwithstanding the FTC's allegations that Lyft had consistently made a variety deceptive earnings claims to induce persons to leave their jobs and become Lyft drivers since January 2021, the FTC did not assert a BOR claim against Lyft. Further, even though Lyft is a multi-billion dollar publicly traded company, the FTC agreed to have Lyft pay only $2 million to settle the claims against it. Unlike here, Lyft did not face an emergency TRO and an asset freeze, but rather had the opportunity to defend itself, pay for competent counsel, and negotiate a very modest resolution. Unless the FTC is simply trying to overpower a weaker opposing party, there is no reason why the FTC should take a far different and far more aggressive approach with a far smaller company and its owner.

### III. The FTC Mischaracterizes Events to Suggest that Mr. Prusinowski's Motion Should Be Denied Because He Disrespected the Court's Order and Frustrated the Receivership

Immediately after the TRO hearing on Friday, September 20, 2024, Mr. Prusinowski and his counsel, Stephen Freeland, engaged in a thirty-minute conference with the Receiver and Receiver's counsel, Robin Weiss. Prusinowski Decl. ¶ 2. During the conference, Mr. Prusinowski provided detailed information about the locations of various assets and accounts related to EEB's business operations. They also discussed the steps required to ensure the prompt transfer of EEB's assets and operations into the Receiver's control, including the delivery of Mr. Prusinowski's laptop and cell phone to the Receiver. Prusinowski Decl. ¶¶ 2-3.

On Monday, September 23, 2024, at approximately 3:30 p.m., Mr. Prusinowski delivered his laptop and cell phone to the Receiver's law offices. Prusinowski Decl. ¶ 3. Then, on Friday, September 27, 2024, the Receiver and defense counsel coordinated on collecting Mr. Prusinowski's personal Gmail account and agreed upon a privilege screening protocol. Declaration of Ryan M. Poteet ("R. Poteet Decl.") ¶ 4. Despite numerous technical challenges that could have been avoided had Mr. Prusinowski had access to his cell phone and laptop to authenticate account access, the Gmail collection was ultimately completed on Monday, September 30, 2024. R. Poteet Decl. ¶ 5; Prusinowski Decl. ¶ 4, 7.

The FTC criticizes Mr. Prusinowski for providing responses to the Receiver "piecemeal" and struggling to recall every name, location, email address, and login credential for his business's accounts and software applications. The FTC, however, neglects to appreciate the very important fact that Mr. Prusinowski was without his cell phone until October 2 and was without his laptop until October 4, 2024, making it literally and practically impossible for him to access and provide all of the requested information. Prusinowski Decl. ¶¶ 5-6. Additionally, Mr. Prusinowski promptly provided the credentials for EEB's bank accounts and other operational accounts, only

5

to have the Receiver change the login credentials upon receiving them – limiting Mr. Prusinowski's ability to promptly access or locate requested financial and business information. At all times, when Mr. Prusinowski could not immediately recall or locate requested details, he informed the Receiver of his inability to do so.

Finally, the FTC asserts that Defendants' September 25, 2024 financial disclosure forms were incomplete. On October 15, 2024 – shortly after Mr. Prusinowski filed the instant Motion – the FTC emailed counsel, asserting the forms were incomplete, through without specifying any deficiencies. R. Poteet Decl. ¶ 6. Notably, the Receiver, whose role is to identify and preserve assets under the TRO, did not express concerns regarding the completeness of Defendants' financial disclosures. R. Poteet Decl. ¶ 6.

In sum, much of the FTC's Opposition is a diversion, intended to obscure the real issues at stake in Mr. Prusinowski's Motion and mislead the Court into believing Mr. Prusinowski disregarded the Court's TRO. That is simply not the case.

### IV. Due Process Considerations Demand Granting Mr. Prusinowski's Request for Attorney's Fees Even if Consumer Redress is Allowed

Rather than win by default, the FTC should want to win on the merits with defendants having received due process. But the FTC's approach here would make any attorney fearful of representing a defendant sued by the FTC even when funds are sent by a non-party, and the FTC's approach here would violate Mr. Prusinowski's due process rights to raise and argue meritorious defenses to the FTC's claims. The FTC argues that Mr. Prusinowski can always seek assistance from third parties. However, Mr. Prusinowski has pleaded with countless friends, acquaintances, and family members to try to garner funds for both legal and family support and has had little success. Prusinowski Decl. ¶ 8-15. The reality is that all of his assets are frozen, he has no other resources, and the FTC is trying to overpower him to get an easy win.

6

The FTC relies heavily on *CFTC v. American Metals Exch. Corp.*, 991 F.2d 71 (3d Cir. 1993) and *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 197 (3d Cir. 2000); however, these cases acknowledge an attorney's right to fees for work performed, and the facts in both cases are distinct from those here. Opp'n at n. 26, 27. In *American Metals*, the Third Circuit recognized that the defendant's lawyers were "entitled to reimbursement" for their efforts. 991 F.2d at 79. The court denied the fee request based on specific circumstances: the defendant had access to unfrozen funds used for partial fee payments, was slow to produce financial records, and engaged counsel only after the asset freeze was imposed. *Id.* at 79-80. Similarly, in *Infinity Grp.*, the district court unfroze $125,000 for legal fees; later, the SEC moved to modify the injunction when it found that the defendants had raised additional third-party funds for their defense. 212 F.3d at 197. The Third Circuit upheld this modification due to the additional fundraising for legal expenses. *Id.* These cases are irrelevant to Mr. Prusinowski's circumstances.

Here, Mr. Prusinowski does not have access to any unfrozen funds, has not been able to raise any additional funds to pay for past legal expenses, and has not made any payment to defense counsel for the services rendered in this case. *See* Prusinowski Decl. ¶¶ 8-15. Mr. Prusinowski's defense counsel began representing him the day the FTC filed its Complaint, prior to any asset freeze. Additionally, the funds were transferred to defense counsel pre-TRO and by a non-party neither named nor mentioned in the Complaint. Mr. Prusinowski and his company promptly provided financial disclosures to the Receiver, who raised no objection to the thoroughness or accuracy of those disclosures. The FTC's only objection to these disclosures lacked specificity and came only after this Motion was filed. The Receiver only designated Atlas LP as a Receivership Entity on October 14, 2024, three days after this Motion was filed. As such, the holdings in *American Metals* and *Infinity Grp. Co.* provide no basis for denying this Motion.

Lastly, *SEC v. Forte*, 598 F. Supp. 2d 689 (E.D. Pa. 2009) is the only case cited from this District, and it does not address the payment of legal expenses. In *Forte*, the court denied the defendant's request to unfreeze assets to pay for living expenses such as "NFL Sunday Ticket," "premium satellite television service," large amounts of credit card debt, and excessive amounts for utilities. *Id*. at 693. None of those expenses are at issue here. At most, *Forte* stands for the proposition that the Court has the discretion to unfreeze frozen assets.

## V.     Conclusion

The FTC tries to compare the case against Mr. Pruzinowski and his request for fees as akin to a bank robber seeking funds from a robbery to pay for his criminal defense. But this is not a criminal case, it is a civil case, and the FTC's BOR claims and demand for consumer redress fail as a matter of law. In a civil context, it would be inconceivable to prevent a class-action defendant from funding their defense merely because a plaintiff filed a lawsuit. Yet, this is the type of unfair advantage the FTC urges here – after preparing its case for months, giving the opposing party next to no notice, and then securing an asset freeze. The FTC wants to leave the opposing party without the opportunity to defend themselves. This imbalance of power and interference with the attorney-client relationship is not due process, but an abusive attempt to avoid the adversarial process and bully a defendant into submission.[3] For the foregoing reasons, Mr. Prusinowski's Motion should be granted.

---

[3] The ability to respond to FTC allegations is more vital now than ever because FTC leadership is directing staff to bring enforcement cases to test the FTC's authority and initiate cases where the underlying facts and evidence do not support bringing an enforcement action. R. Poteet Decl. ¶ 8, Ex. 2, Staff of H. Comm. on the Judiciary, 118th Cong., *Interim Report on Abuse of Power, Waste of Resources, and Fear: What Internal Documents and Testimony From Career Employees Show about the FTC under Chair Lina Kahn*, at 22 (Feb 22. 2024) (explaining that FTC leadership directed FTC staff to "bring cases unsupported by facts" and "directing complaint allegations against the evidence").

Date:  October 29, 2024                                   Respectfully submitted,

*/s/ Ryan M. Poteet*
Clair E. Wischusen (Bar No. 306752)
Ryan M. Poteet (*pro hac vice*)
Stephan R. Freeland (*pro hac vice*)
GORDON REES SCULLY MANSUKHANI, LLP
277 S. Washington Street, Suite 550
Alexandria, Virginia 22314
Tel. (202) 399-1009
Fax. (202) 800-2999
cwischusen@grsm.com
rpoteet@grsm.com
sfreeland@grsm.com
*Counsel for Defendant Peter Prusinowski*

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 29th day of October 2024, a true and accurate copy of the foregoing was electronically filed via the Court's ECF system pursuant to the agreement of the Parties, and was thereby served upon all counsel of record.

By: */s/ Ryan M. Poteet*
Ryan M. Poteet