**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**EMPIRE HOLDINGS GROUP LLC d/b/a ECOMMERCE EMPIRE BUILDERS d/b/a STOREFUNNELS.NET and PETER PRUSINOWSKI,**<br><br>Defendants. | Civil Action<br><br>No. 2:24-cv-04949-WB |

## DECLARATION OF RECEIVER, KEVIN DOOLEY KENT

Pursuant to 28 U.S.C. § 1746, and in advance of the hearing currently scheduled for November 12, 2024, I, Kevin Dooley Kent, in my capacity as Court-appointed Receiver, hereby declare a follows:

1. I am over the age of 21, under no disability, and am competent to testify to the matters contained in this Declaration.

2. On September 20, 2024, I was appointed as Receiver over Defendant Empire Holdings Group LLC d/b/a Ecommerce Empire Builders d/b/a Storefunnels.net ("EEB"), pursuant to the Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief (ECF No. 19) (the "TRO Order") entered in the above-captioned matter.

3. On October 2, 2024, I identified the entities Star Active Sports LLC ("Star Active") and Empire Partner Network LLC ("Empire Partner") as Receivership Entities pursuant to Paragraph XII, Section U of the TRO Order.

4. On October 14, 2024, I identified the entities Atlas Fund Limited Partnership ("Atlas Fund"), Atlas Fund Trust ("Atlas Trust"), and Atlas Fund Land Trust ("Atlas Land") (collectively, the "Atlas Entities") as Receivership Entities pursuant to Paragraph XII, Section U of the TRO Order.

5. On November 8, 2024, I was reappointed as Receiver over EEB, Star Active, Empire Partner, Atlas Fund, Atlas Trust, and Atlas Land (collectively the "Receivership Entities") pursuant to the Stipulated Preliminary Injunction (ECF No. 49) (the "Stipulated PI") entered in the above-captioned matter.

6. I make this Declaration in Support of the Receiver's First Written Report filed in this matter on October 22, 2024 (ECF No. 38), to provide the Court with updates regarding events that have occurred since October 22, 2024, and to clarify certain issues for the record in advance of the hearing scheduled for November 12, 2024.

7. The statements made in this Declaration are based upon my personal knowledge, information, and belief, my or my agents' investigation, communications, review of corporate documents, communications, filings, and other data compilations made in the ordinary course of business of EEB and/or in connection with the Receivership, and my inquiries or inquiries made under my direction of others with knowledge regarding matters set forth herein, in my capacity as Receiver for the Receivership Entities. If called to testify thereto, I could and would do so.

8. The Receiver's First Written Report (ECF No. 38) was written with my input and under my supervision, and I fully reviewed and read the Receiver's First Written Report before it was filed on October 22, 2024.

9. To the best of my knowledge, information, and belief formed after reasonable inquiry, the Receiver's First Written Report was true and correct as of the date it was filed.[1] A copy of the Receiver's First Written Report is attached hereto as Exhibit A and is incorporated herein by reference.

---

[1] In the Receiver's First Written Report, I stated that Gordon Rees had asserted a retaining lien in the amount of $231,358.00. *See* ECF No. 38 at 10. In the Receiver's Response to Defendants' Motion and Memorandum for Fees Incurred to Date, and Additional Fees to Continue to Defend or, in the Alternative, to Withdraw as Counsel of Record, I clarified that the asserted retaining lien amount was $231,358.**5**0. *See* ECF No. 40 at 3.

10. Since the filing of the Receiver's First Written Report, I have continued to carry out my duties under the TRO Order with respect to the Receivership Entities. Additional meaningful updates regarding developments in the Receivership are set forth below, along with statements of clarification in response to certain statements and representations made in recent filings.

11. As of November 5, 2024, my agents have deactivated the following social media accounts: Instagram (@ecommerce.empire.builders); TikTok (@ecomm.empire.builders); X/Twitter (@OffPeterPru); and Facebook (@Ecommerce Empire Builders). On October 30, 2024, my agents oversaw the deactivation of the EEB Facebook Page done by Jamie Zeller, who had full administrative control over the Facebook Page. The EEB Spreaker podcast episodes remain private so that no member of the public has access to them. Additionally, all of EEB's YouTube videos remain "unlisted," which prevents the public from accessing the videos.

12. My agents have updated the Receivership Website, located at https://www.empireholdingsgroupreceivership.com, to include recent court filings, and will continue to utilize the Receivership Website to provide updates to consumers and other members of the public.

13. My agents have also posted notices regarding the TRO Order and Receivership Website on two additional websites associated with Defendants, https://peterpru.com and https://empireplr.com, pursuant to Section XII, Paragraph V of the TRO Order.

14. On October 9, 2024, my counsel Robin Weiss and I spoke with Defendants' counsel by phone and indicated that I was likely to shut down most or all of EEB's operations in connection with my duties under the TRO Order, because I did not believe it could operate both legally and profitably. I also indicated that if there was anything else that they thought I should know or review in connection with that decision, to let me know very soon. I did not receive any information in follow-up to that discussion.

15. On October 29, 2024, my counsel sent a letter to EEB back-office contractors[2] notifying them that, in accordance with my conclusions drawn in the Receiver's First Written Report and pursuant to Section XII, Paragraph T of the TRO Order, I would start formally shutting down EEB business operations on October 31, 2024, and that their status as a contractor would thus formally terminate on October 31.

16. Following my counsel's October 29 letter to EEB back-office contractors, four contractors reached out to me and my agents requesting final pay. Upon receiving proof from the contractors that they are normally paid for work already performed—as opposed to pay in advance of work performed—my agents facilitated final wire transfer payments to the four contractors, which totaled to $13,747.26. Additionally, my counsel has continued to address payment difficulties relating to prior payments made to back-office contractors that have been returned due to issues with international wire transfers.

17. Additionally, my agents have continued—and will continue—to make weekly payments to Simvoly, the White Label service provider that manages the day-to-day operations and customer support for Storefunnels.net, in order to keep Storefunnels operational for the time being. Specifically, on October 29, 2024, I made a payment to Simvoly in the amount of $1,426.00, and on November 7, 2024, I initiated another payment in the amount of $1,197.00.

18. My agents have also made payments to other service providers/platforms, including GoDaddy, to ensure that Storefunnels.net remains fully operational. Specifically, I made payments to GoDaddy in the amounts of $48.88 on October 23, 2024, $9.71 on October 29, 2024, and $9.71 on November 7, 2024.

---

[2] Defense counsel and Defendant Peter Prusinowski were copied on the letter.

19. On October 29, 2024, I sent a letter to current and former EEB customers notifying them of my plan to start formally shutting down EEB business operations on October 31, 2024, but making clear that Storefunnels.net would remain fully operational through at least November so that they could have time to decide whether they would like to keep their websites active and/or whether they would like to move their online storefronts to a different platform.

20. Through and including November 6, 2024, we have received approximately 80 Consumer Questionnaires from current and former EEB customers. The overall reported customer experience is overwhelmingly negative and very similar to what I reported in the Receiver's First Written Report. Some additional notable customer responses include the following:

- "The experience and result has been absolutely stressful and not what has been promised, I was promised I'll be profitable within first 2 months, but almost after six months, not a single dollar in profit."

- "We were told they would create an ecomm business for us that was 'guaranteed' to bring in at least $10k a month. We only lost money. . . . They couldn't even come close to delivering on what they promised."

- "We are not getting the product that's been promised to us."

- "There were plenty of sales people trying to tell us we needed to go 'all in' and buy a bigger package, but they in no way deliver what they promised so we weren't about to be scammed again."

- "Empire is dishonest, crooked in every way, provide no support when needed. PROVEN products were cheap dropshipped bad products from China and the ads were worthless."

- "Nothing that was promised to me happened in a way that produced profitable results."

- "For the price that I paid [for] this and the result that they gave me, I knew that I just got scammed."

- "In 2 years, defendant has not selected a single product that has reliably earned more income per month than it has cost to advertise it. Furthermore, Defendant repeatedly declined to provide me their commitment to performance goals be it for engagement or revenue. I contracted for a managed – or, delegated—service. . . . I have not received my fair share of the transaction."

21.  Following the submission of the Receiver's First Written Report to the Court, I and my agents have also (1) corresponded with Stripe and American Express demanding compliance with the TRO Order, and subsequently worked through such noncompliance with counsel for both entities; (2) corresponded with TD Bank requesting documents and information regarding Defendant Prusinowski's personal accounts; (3) corresponded with Closer Secrets LLC/Randall Grizzle[3] requesting documents and information pursuant to the TRO Order; (4) corresponded with Celsius Network LLC upon Defendant Prusinowski forwarding a notification regarding a claim distribution in connection with bankruptcy proceedings in the Bankruptcy Court for the Southern District of New York, Case No. 22-10964 (MG) requesting documents and information pursuant to the TRO Order; and (5) served a subpoena on Lodmell & Lodmell P.C. requesting documents regarding the Atlas Entities, and just received documents from Lodmell on November 7, 2024 in response to the subpoena.

22.  In accordance with Section XXII, Paragraph A of the TRO Order, on October 25, 2024, counsel for the FTC and my counsel deposed Defendant Peter Prusinowski,[4] and on November 4, 2024, counsel also deposed EEB COO Aliakbar Gulshan and Defendant Prusinowski's wife, Kellie Prusinowski.  Defendant Prusinowski and Mr. Gulshan both provided testimony that supports my conclusion in the Receiver's First Written Report to the Court that EEB's business operations cannot be conducted both legally *and* profitably.  *See* ECF No. 38 at 40-44.  Defendant Prusinowski and Mr. Gulshan both testified that EEB started making changes to its marketing and advertising earlier this year in attempt to be in compliance with the law, and that EEB experienced a slowdown in business around the same time.  *See* Ex. B, P. Prusinowski Dep Trx. at 49:5-12.  Mr. Prusinowski specifically testified that EEB was "losing a lot of money every month," that he "was just trying to find ways to

---

[3]  *See* ECF No. 38 nn.16 & 34.

[4]  Excerpts from Defendant Prusinowski's deposition transcript are attached hereto as Exhibit B.  I and my agents have not yet received Mr. Gulshan's deposition transcript.

keep [EEB] alive," and that the business was suffering *as a result of* the changes made to EEB's marketing and advertising. *See id.* at 63:1-18. Mr. Gulshan testified that due to the business slowdown and prior to the entry of the TRO Order, EEB had reduced nearly all of its contractors' pay and terminated one of its contractors. Additionally, Mr. Prusinowski testified that EEB did not have any guidelines or budgets for how much it spent on marketing and advertising, did not have a limit on Mr. Prusinowski's or Mr. Gulshan's expense approval authority, gave free range to the sales team to set price points for product sales to prospective customers, and that back office contractors would continue to provide support services to customers whose support services had already expired per their contract if the customer still reached out for support through the Basecamp platform. *See id.* at 37:18-25; 74:7–75:10; 84:2-16; 183:6-12; 184:10-15.

23. In working through Stripe's noncompliance with the TRO Order with Stripe's counsel, my agents confirmed that Stripe would pause payouts, but would otherwise continue to allow EEB customers' Storefunnels' subscription payments to process and accrue in the Storefunnels Stripe account and that, once I and my agents formally take steps to shut down Storefunnels, that we would then direct Stripe to transfer the balance of the Storefunnels Stripe account to the Receivership Account. As of November 7, 2024, the balance in the Storefunnels Stripe account was $24,216.07.

24. Defendant's Reply in Support of its Motion for Fees to Date and to Withdraw as Counsel of Record (ECF No. 42) and the Declaration of Peter Prusinowski in support thereof (ECF No. 42-1) contain certain inaccuracies which the Receiver wishes to clarify for the record.

25. First, the Motion and Declaration state that Defendant Prusinowski and his counsel from Gordon Rees, Stephen Freeland, spent approximately thirty minutes speaking with the Receiver and his counsel at the courthouse, within minutes of the entry of the TRO Order. *See* ECF No. 42 at 5; ECF No. 42-1 ¶ 2. That meeting was not nearly as long as Defendants represent, and Defendant

Prusinowski admitted at his deposition that "[w]e only met for like a couple minutes in the hallway." Ex. B, P. Prusinowski Dep. Trx. at 119:17-19.

26. During that meeting, I requested the turnover of Defendant Prusinowski's cell phone, though he denied that at his deposition. Ultimately, Mr. Prusinowski's personal cell phone and laptop were not turned over to me until September 23, 2024, following multiple requests from myself/my counsel over the weekend.

27. The Motion and supporting Declaration of Ryan Poteet also indicate that I did not express any concerns regarding the completeness and/or accuracy of Defendants' July 25, 2024 Financial Disclosures, thus suggesting that the I found the financial disclosures to be accurate and complete. *See* ECF No. 42 at 6; ECF No. 42-2 ¶ 6. My team was focused on locating and identifying accounts and preserving documents and assets at the time and, notably, frequently had to reach out to Defendant Prusinowski for account information that should have been automatically and immediately provided to the Receiver under various provisions of the TRO Order. Since my team had direct access to many accounts to confirm balances, we focused on that raw data, unfiltered by Defendants, in the first instance wherever possible. Regardless, for the avoidance of doubt and to ensure that the record is clear, Defendants' financial disclosures contained inaccuracies. For example, the Financial Disclosures identified assets with Acorns Securities LLC, and Fundrise Real Estate Investment Trust, LLC. The current balance on these accounts is not reported; instead, the financial disclosures stated "[b]ecause Mr. Prusinowski has no access to this account (after the TRO's entry, the Receiver assumed access and changed the log in and password information), Mr. Prusinowski is not able to identify the current balance at this time. However, Mr. Prusinowski neither identified these accounts for my team nor provided the log-in information for these accounts; thus, I did not take control over or change the passwords for these accounts. My counsel questioned Mr. Prusinowski about these statements at his

deposition. Mr. Prusinowski testified that he believed he provided the log-in information for these accounts, but then stated that he was not sure if he reviewed the log-in information that he provided to me to confirm whether or not he had actually provided the log-ins for these specific accounts. *See* Ex. B, P. Prusinowski Dep. Trx. at 202:2–203:1.

28. Through my agents, I have promptly provided Defendants with access to any document they have requested, including American Express statements.

29. My counsel and accountants have advised both Mr. Prusinowski and his accountant that Mr. Prusinowski is responsible for filing his own personal tax return, and they have been working with the accountant to ensure she has access to what is needed to file that return.

30. To the extent Defendant Prusinowski has experienced a lack of access to certain accounts due to my changing of passwords and/or cutting off access while attempting to preserve records and ensure that assets were not dissipated, all such actions were taken pursuant to my duties and obligations under the TRO Order, including, but not limited to, Section XII, Paragraph E, which directed and authorized me to "[o]btain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents. The Receiver shall: divert mail; preserve all Documents of the Receivership Entities that are accessible via electronic means (such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords, or other log-in credentials; take possession of all electronic Documents of the Receivership Entities stored onsite or remotely; take whatever steps necessary to preserve all such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining electronic documents stored onsite or remotely." TRO Order § XII ¶ E.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 11, 2024

Respectfully Submitted,

Kevin Dooley Kent

*Receiver for Empire Holdings Group LLC, Star Active Sports LLC, Empire Partner Network LLC, Atlas Fund Limited Partnership, Atlas Fund Trust, and Atlas Fund Land Trust*